**UNITED STATES of America,**
Appellant,

v.

**Juan A. ORTA, Appellee.**

No. 16891.

United States Court of Appeals
Fifth Circuit.

March 18, 1958.

Writ of Certiorari Denied June 9, 1958.

See 78 S.Ct. 1149.

O. B. Cline, Jr., Asst. U. S. Atty., James L. Guilmartin, U. S. Atty., Miami, Fla., Carl G. Coben, Atty., Dept. of Justice, Washington, D. C., William F. Tompkins, Asst. Atty. Gen. (Harold D. Koffsky, Marvin B. Segal, Attys., Dept. of Justice, Washington, D. C., of counsel), for appellant.

Gino P. Negretti, Miami, Fla., for appellee.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

RIVES, Circuit Judge.

A four-count indictment was returned against Orta, each count charging the commission of perjury.[1] The several counts were based upon different portions of his testimony before the United States Grand Jury at Miami, Florida on January 10, 11 and 15, 1957.[2]

Orta filed a written motion to dismiss the indictment on the ground that his testimony, alleged to be false, had been procured in derogation of his rights under the Fifth Amendment.[3] In support of that motion, he alleged that he was an involuntary witness testifying under the compulsion of a subpoena; that he was a foreigner, unversed in the English language and ignorant of his constitutional rights; that the Government, though knowing of such ignorance, failed to advise him of his rights and took undue advantage of him.

The district court heard argument of counsel on the motion and then directed that the testimony given by Orta before the Grand Jury be transcribed and submitted to the court. After examining that testimony, the district court denied the motion to dismiss the indictment; but at the same time, on its own motion, ordered another hearing and requested counsel to stipulate to answers to the following questions:

> "1. Did the defendant understand English at the time he was before the Grand Jury?
>
> "2. Was the defendant warned, outside of the transcript of testimony, of his constitutional right to refuse to answer questions which might tend to incriminate him?
>
> "3. Did the defendant have legal counsel prior to testifying before the Grand Jury?
>
> "4. Irrespective of legal counsel, did the defendant understand his constitutional rights, himself?"

The United States attorney advised that the Government was not in position to answer any of the four questions either in the affirmative or the negative. A hearing was held at which Orta and

1. "§ 1621. Perjury generally
"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both." 18 U.S.C.A. § 1621.

2. The parts of his testimony alleged to be false and perjurious were:
First Count:
"Q. Mr. Orta, did you arrange for the transportation of a certain number of Cubans from New York to Miami? A. I read that in a Cuban paper. I was accused of that, but I don't know anything about that."
Second Count:
"Q. Now on December 7th, did you make any airline reservations for Eastern Airlines for nineteen individuals? Yes or No. A. No."

[redacted]

Third Count:
"Q. Mr. Orta, were you in the Pan American Air Lines office at Flagler Street and Biscayne Boulevard on December 16, 1956? A. I have not been there, and I would like to be permitted to add something.
* * * * *
"A. Well, I have been at that office, but on that particular day, no."
Fourth Count:
"Q. In the light of the statement you just made, Mr. Orta, did you visit the office of Mrs. Beulah Kaye, a ticket agent, Pan American Airlines ticket office on Flagler Street and Biscayne Boulevard where you asked for reservations for a party of twelve men? A. Me? No. I was there at that office to take out some passage for relatives of mine, but I don't even know who that lady is.
"Q. Mr. Orta, I don't expect you to know who the lady is exactly, but were you in the Pan American Airlines office on December 9th, 1956? That was a Sunday. A. No, sir, I was not there."

3. "* * * nor shall any person * * * be compelled in any criminal case to be a witness against himself, * * *." Amendment 5, Constitution of the United States.

three witnesses testified to Orta's ignorance of his rights and unfamiliarity with the English language. At the conclusion of the hearing, the court ordered and adjudged that Orta's testimony taken before the Grand Jury be suppressed and that the indictment be dismissed. The United States appeals from that judgment.[4]

■ The district court did not state its findings or issue an opinion as to its reasons for suppressing the testimony and dismissing the indictment. Both parties assume that the judgment was based on the court's opinion that the appellee's rights under the Fifth Amendment had been infringed. Upon appeal, however, we think that the issues should extend to whether the judgment was proper for any reason. Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.A., provides for a pretrial hearing on a motion to suppress evidence in search and seizure cases only; and several cases have held that evidence may be suppressed *prior to indictment* only in cases where constitutional rights have been violated.[5] Clearly, however, the district court might properly conduct a pretrial hearing in this case to determine the collateral issue as to whether the evidence should be suppressed because wrongfully obtained for any reason.[6]

■■ It is clear that the protection of the Fifth Amendment relates to crimes alleged to have been committed before the time when the testimony is sought. A witness, ignorant and uninformed of his constitutional rights, would not intelligently waive them if he testified, thinking that he was compelled to do so.[7] He might answer truthfully and thereafter assert the constitutional guaranty.[8] Under no circumstances, however, could he commit perjury and

successfully claim that the Constitution afforded him protection from prosecution for that crime. As said in Glickstein v. United States, 1911, 222 U.S. 139, 142, 32 S.Ct. 71, 73, 56 L.Ed. 128; " * * * the immunity afforded by the constitutional guaranty relates to the past, and does not endow the person who testifies with a license to commit perjury."

■ The only debatable question is one of the supervision of the conduct of Government representatives in the interest of fairness. In United States v. Scully, 2 Cir., 1955, 225 F.2d 113, 116, the Court of Appeals for the Second Circuit held:

" * * * the mere possibility that the witness may later be indicted furnishes no basis for requiring that he be advised of his rights under the Fifth Amendment, when summoned to give testimony before a Grand Jury."

That holding is applicable to the present record. There is no showing that the Grand Jury before which Orta testified was seeking to indict him or any other person already identified. An opening statement had been made to the Grand Jurors as follows:

"Mr. Lenvin: My name is Nathan Lenvin and I am the Chief of the Registration Section of the Internal Security Division of the Department of Justice. My main responsibility is the enforcement and administration of the Foreign Agents Registration Act of 1938, as amended, and the Voorhees (sic) Act. The Foreign Agents Registration Act requires the registration with the Attorney General of any person who acts within the United States as an agent of a foreign principal, and the Voorhees (sic) Act requires the reg-

---

4. As permitted by 18 U.S.C.A. § 3731.

5. In re Fried, 2 Cir., 1947, 161 F.2d 453, 465, 1 A.L.R.2d 996; Centracchio v. Garrity, 1 Cir., 1952, 198 F.2d 382, 387; Chieftain Pontiac Corp. v. Julian, 1 Cir., 1954, 209 F.2d 657, 659; Biggs v. United States, 6 Cir., 1957, 246 F.2d 40, 42.

6. See cases collected in 23 C.J.S. Criminal Law § 1060 b.

7. United States v. Scully, 2 Cir., 1955, 225 F.2d 113, 117, note 1 and cases there cited.

8. See United States v. Lawn, D.C.S.D.N.Y. 1953, 115 F.Supp. 674, 677.

istration with the Attorney General of an organization which advocates the overthrow of a government, not necessarily the government of the United States, by the use of force or violence, or which advocates the use of such means for the overthrow of a government.

"We have received information that there are individuals and organizations within the United States who had been acting as agents of an underground movement in Cuba and who had advocated the violent overthrow of the Batista Government in Cuba. At this time this information is not sufficiently specific to warrant a request of the grand jury for the return of an indictment, but we are anxious to conduct an investigative proceeding before this grand jury to determine exactly, if we can, what these groups and individuals have been doing within the United States which may be in violation of federal statutes. It may be that at the close of this proceeding the evidence will be sufficient to warrant submitting this matter for your consideration for the return of an indictment, but at this stage of the proceeding we are simply engaged in an exploratory procedure." [9]

An almost identical factual situation was faced by the Seventh Circuit in United States v. Parker, 1957, 244 F.2d 943, and in an able opinion by Judge Finnegan it was held that the failure to apprise the witness of his privilege against self-incrimination did not make his perjurious testimony illegally obtained evidence. The views there expressed, with which we are in full agreement, make further discussion in this case unnecessary.[10]

Perjury is one of the most elemental of all crimes. Every sane person from the beginning of time has recognized its moral iniquity. No one can fail to know that any civilized system of laws must denounce perjury because it pollutes the very fountainhead of justice.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

9. For the Foreign Agents Registration Act, see 22 U.S.C.A. § 611 et seq.; for the Voorhis Act, see 18 U.S.C.A. § 2386.

10. See also, Shinyu Noro v. United States, 5 Cir., 1954, 148 F.2d 696, 699; Claiborne v. United States, 8 Cir., 1935, 77 F.2d 682, 690; United States v. Miller, D.C.E.D.Pa.1948, 80 F.Supp. 979, 981; United States v. Cason, D.C.W.D.La. 1941, 39 F.Supp. 731, 734.