Oswald **ROBINSON**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 22151.

United States Court of Appeals
Ninth Circuit.

Sept. 26, 1968.

---

Frederick J. Titcomb (argued), Honolulu, Hawaii, for appellant.

Michael Hong (argued), Asst. U. S. Atty., Herman T. F. Lum, U. S. Atty., Honolulu, Hawaii, for appellee.

Before MADDEN,* Judge of the United States Court of Claims, and HAMLEY and MERRILL, Circuit Judges.

J. WARREN MADDEN, Judge:

In this appellate proceeding no question is involved with respect to the jurisdiction of the district court or of this court.

The appellant Robinson, hereinafter designated as the defendant was convicted in the district court of perjury, in violation of § 1621 of Title 18, United States Code.

On August 23, 1966, the defendant, pursuant to a subpoena, appeared before a federal grand jury and gave testimony. His testimony was false. On December 13, 1966, the same grand jury indicted him for perjury committed on August 23, 1966. He was tried on that indictment, found guilty by a petit jury, and sentenced. He appeals from that conviction.

The defendant claims that the testimony which he gave before the grand jury on August 23, and which was taken down by a court reporter was not admissible but was erroneously admitted in evidence at his perjury trial. He says it was not admissible in the perjury trial because his constitutional rights were violated at the grand jury hearing on August 23 at which he gave the false testimony. He says that before he was required to take the witness stand in the grand jury proceeding the Assistant United States Attorney who was acting for the Government in the proceeding, should have advised him that he had a right to have a lawyer, and a right to consult with a lawyer before testifying; that he had a privilege not to incriminate himself in testifying; that he had the privilege not to testify; that if he did testify before the grand jury, that testimony could be used against him.

The giving of these warnings, of the lack of which the appellant complains, would be an extraordinary way in which to introduce an ordinary witness who has been subpoenaed to appear in court, to do his civic and legal duty. What the court and his government requires of him is that he take an oath to tell the truth, and then proceed to tell the truth. In the usual case he will have no need to consult a lawyer before testifying, or to have a lawyer present when he testifies, or to

* Senior Judge, The United States Court of Claims, sitting by designation.

claim the privilege against self-incrimination, or to worry about whether his testimony could be used against him in another proceeding. In the usual case then, the warnings would be a waste of time and a somewhat humiliating experience for the prospective witness. But if the warnings are required for the occasional witness who, having taken the stand, gives false testimony, must they not be required for all witnesses since no one can know which witness will perjure himself, and the one who, as did the defendant, perjures himself, may claim, as does the defendant, immunity from prosecution for the perjury because he was not given the constitutionally required warnings?

The appellant does not urge that the warnings described above are constitutionally required for all witnesses. He says that his situation was not that of an ordinary witness. The grand jury investigation to which he was subpoenaed concerned burglaries in which quantities of beer, cigarettes, and watches were stolen from a Navy Exchange warehouse. Two men, Davis and Ferge were suspected of committing the burglaries and were the prime subjects of the investigation. The stolen beer had been stored under Davis' house next door to the house of a friend of the defendant, whom the defendant frequently visited. An F.B.I. Special Agent, one Hoy was told that the defendant had purchased some of the stolen merchandise from Davis and Ferge. Hoy called on the defendant and questioned him. The defendant said that he knew Davis and Ferge, but knew nothing about the thefts and had made no purchases from the two men. This interview was on July 28, 1966. On August 23, 1966, as we have seen, the defendant appeared before the grand jury. He there made the same statements that he made to Hoy. He was questioned by two members of the grand jury, and by the Assistant United States Attorney, but he persisted in his denials. At his perjury trial, some months later, those denials were proved to be false.

The appellant says that, in the circumstances in which the government had reason to believe that truthful answers by the defendant to the grand jury inquiries would incriminate him as a receiver of stolen goods, the defendant was entitled to the same warnings about his right to consult a lawyer, and his privilege not to incriminate himself, as if he had been in the custody of police in the accusatory stage of an investigation, i. e., to the warnings required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■■ The evidence does not indicate that the defendant was called before the grand jury for the purpose, on the part of the Government, of making a criminal case against him. From all that appears, the Government was aware that the defendant had information which would be useful in making a case against Davis and Ferge for burglary. Although the defendant, when questioned by the F.B.I. had denied any knowledge of the activities of Davis and Ferge, the Government had a right to hope, as any litigant does with regard to any witness, that on the witness stand, under oath, he will tell the truth. Undoubtedly, the defendant, when questioned by the grand jury as to whether he had bought beer from Davis, had the right to claim his privilege against self-incrimination and refuse to answer. But he did not claim the privilege, and the Government was under no duty to suggest to him that he claim the privilege. As we have said above, there is no indication that the Government then, or ever, entertained an idea of bringing criminal charges against the defendant concerning burglaries, or the receipt of stolen goods. In the case of United States v. Scully, 225 F.2d 113, 116 C.A. 2 (1955) Judge Medina wrote:

"＊ ＊ ＊ the mere possibility that the witness may later be indicted furnishes no basis for requiring that he be advised of his rights under the Fifth Amendment, when summoned to give testimony before a grand jury."

We agree with the quoted statement. It was cited with approval in United States v. Parker, 244 F.2d 943, C.A. 7 (1957), cert. den. 355 U.S. 836, 78 S.Ct. 61, 2 L. Ed.2d 48.

We do not agree with the defendant's contention that a witness, in court pursuant to a subpoena, is under compulsion similar in all respects to the compulsion of being in the custody of police as a suspect upon whom the investigation has focused. True, there is an important dictum to the effect that in certain circumstances such as that of an illiterate or ignorant witness who gives self-incriminating testimony, that testimony may not later be used to convict him of the crime to which his self-incriminating testimony related. See United States v. Orta, 253 F.2d 312, C.A. 5 (1958) and see Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951) for the usually applicable rule that the privilege of a witness not to incriminate himself is waived if not claimed.

 In the instant case the defendant, in his testimony did not incriminate himself by making any confession or admission as to any crime which he, or anyone, had committed in the past. Our problem, therefore, is not the problem adverted to in the dictum in *Orta*, supra. We have held, above, that in the circumstances, there was no duty to give the Miranda warnings to the defendant, and therefore no violation of his constitutional rights. If our conclusion on that point is wrong, further consideration of other problems is necessary. If we assume that the defendant was entitled to the Miranda warnings and did not receive them, but did not give any self-incriminating testimony, the absence of the warnings would seem to be irrelevant. That brings us to the defendant's contention that the absence of the warnings was a violation of constitutional rights, which violation tainted his entire grand jury testimony and made it inadmissible for the purpose of proving, in his instant trial for perjury, that the testimony was false. The theory of the defendant's contention is so elusive that it is difficult to write about it. It is really a *tour de force*, rather than a reasoned conclusion. It requires, *sub silentio*, an assumption that there is a duty upon the government to have an observer present at all trials to give a specific warning to any witness who, it is thought, may perjure himself, that if he does perjure himself, he may be prosecuted.

The contention made by the defendant has been urged upon other courts, and rejected by them. Glickstein v. United States, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911); United States v. Winter, 348 F.2d 204, C.A. 2 (1965), cert. den. 382 U.S. 955, 86 S.Ct. 429, 15 L.Ed. 360; United States v. Orta, supra, 253 F.2d 312, C.A. 5 (1958); [1] United States v. Parker, supra, 244 F.2d 943, C.A. 7 (1957); United States v. Ponti, 257 F. Supp. 925, E.D.Pa. (1966). The Ponti case reviews the authorities, and discusses the doctrine that the privilege against self incrimination relates to past criminal acts and not to future acts such as perjury which the witness commits in the testimony which he proceeds to give. See Glickstein v. United States, supra, where the court said at 222 U.S. p. 142, 32 S.Ct. p. 73:

" * * * The immunity afforded by the Constitutional guaranty relates to the past, and does not endow the person who testifies with a license to commit perjury."

It may be worth noting that statutes which grant or permit the court to grant

---

1. Judge Rives said: "Perjury is one of the most elemental of all crimes. Every person from the beginning of time has recognized its moral iniquity. No one can fail to know that any civilized system of laws must denounce prejury because it pollutes the very fountain head of justice." p. 315. Earlier in his opinion Judge Rives said: "Under no circumstances, however, can he commit perjury and successfully claim that the Constitution afforded him protection from prosecution for that crime." p. 314.

immunity in exchange for testimony which may incriminate a witness, provide that the immunity does not cover perjury committed in the giving of the testimony for the giving of which immunity was granted.

The defendant relies on a group of New York State Court decisions, including People v. Steuding, 6 N.Y.2d 214, 189 N.Y.S.2d 166, 160 N.E.2d 468 (1959). In Steuding the court said:

> By virtue of the Constitution of this State, (Art. I, § 6)—and it is solely the Constitution of New York with which we are now concerned,—* * *.

The New York cases, being so expressly limited in their scope, are not relevant to the instant case.

The defendant introduces the second branch of his argument for reversal with the following statement:

> The trial judge erred in its extensive participation in the examination of witnesses called by the United States to the prejudice of appellant and in violation of the due process clause of the Fifth Amendment to the Constitution of the United States.

■■ Counsel quote verbatim several instances of participation by the judge in the questioning of witnesses. The instances do not seem to us to show any lack, or appearance of a lack of impartiality on the part of the judge. In some of the instances it might have been just as well, or better, if the judge had refrained from interposing with questions, or had interposed later or had terminated his participation earlier. But the trial judge has a wide discretion in his management of the trial. Trial judges are human beings who are unique in their temperaments and intellectual qualities, and it is, of course impossible to man the benches with judges each of whom would fit into a common mold. We can only say, with regard to the judge's conduct of the trial, that we have discovered nothing whatsoever in that conduct which, either by design or by inadvertence, could have impaired the defendant's right to a fair trial. Having said that, we have disposed of the defendant's claim that he was, by the conduct of the judge, denied due process of law.

This court, in Smith v. United States, 305 F.2d 197, 205, C.A. 9 (1962) said:

> "A federal trial judge, as has many times been said, is more than a moderator or umpire. He has the responsibility to preside in such a way as to promote a fair and expeditious development of the facts unincumbered by irrelevancies. He may assist the jury by commenting upon the evidence and this may include an appraisal of the credibility of witnesses, providing the comment is fair and the jury is clearly instructed that they are to find the facts and may disregard such comments.

> "In fulfilling this responsibility during the stress of a criminal trial, few, if any judges can altogether avoid words or actions, inadvertent or otherwise, which seems inappropriate when later examined in the calm cloisters of the appellate court. But unless such misadventures so persistently pervade the trial or, considered individually or together, are of such magnitude that a courtroom climate unfair to the defendant is discernible from the cold record, the defendant is not sufficiently aggrieved to warrant a new trial."

The trial judge in the instant case did not even approach the outer limits of the discretion permissible under the language just quoted.

We find no error and we affirm the judgment.