**UNITED STATES of America**

v.

**James TIMONET.**

**Crim. A. No. 74–379.**

United States District Court, E. D. Louisiana.

Dec. 10, 1974.

Gerald J. Gallinghouse, U. S. Atty., Ronald A. Fonseca, Asst. U. S. Atty., New Orleans, La., for United States of America.

Guy Johnson, Louis A. DiRosa, Di-Rosa & DiRosa, New Orleans, La., for James Timonet.

HEEBE, Chief Judge:

On November 26, 1974, defendant James Timonet was brought to trial before a jury on a two-count indictment. The first count alleges that defendant knowingly made false statements before a grand jury in connection with its investigation of bribery of official ship inspectors at the New Orleans docks. The second count alleges that defendant knowingly issued a false certificate of inspection, in violation of 7 U.S.C. § 87b(b)(3).

At trial, it was discovered for the first time that defendant's statements before the grand jury, sought to be admitted into evidence, were not preceded by adequate *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Accordingly, the Court held these statements inadmissible under authority of *United States v. Mandujano*, 496 F.2d 1050 (5th Cir. 1974), and, because the govern-

ment had no other evidence in support of the first count, directed a verdict of acquittal as to that count. Defendant subsequently withdrew his plea of not guilty to count two and entered a plea of nolo contendere. Because of the somewhat complicated legal issues involved, the Court feels it is appropriate to state written reasons to accompany its decision from the bench.

Two basic issues are presented by this case: (1) when Timonet testified before the grand jury, was he placed "virtually in the position of a defendant," as that term is used in United States v. Mandujano, supra, so as to require suppression of that testimony?; and (2) is the Court of Appeals' decision in Mandujano, supra, so as to require sup-anda warnings be given to grand jury witnesses in the position of a virtual defendant, to be applied in a case where trial occurred after the date of decision, although the grand jury questioning occurred before it. For reasons stated within, we answer both questions in the affirmative.

### I. The holding of *Mandujano*

United States v. Mandujano, supra, was decided by the Court of Appeals for the Fifth Circuit on June 28, 1974. The court held for the first time that persons in the position of putative defendants before a grand jury are entitled to *Miranda* warnings:

"[W]here a totally unfair procedure is put in train—as when there is a factual determination that a person who is subpoenaed before the grand jury and questioned about an alleged crime, was already known to the satisfaction of the prosecuting agency prior to the grand jury appearance to be guilty of that precise crime—elemental fairness requires that such a person is under such compulsion as to require that he be given the *Miranda* warnings, and that failure to do so must require suppression of any incriminating testimony given by him even though he is being prosecuted for giving false testimony." United States v. Mandujano, *supra,* at 1058.

■ The court reiterated the general principle that a grand jury witness is not entitled to warnings of his right to appointed counsel and his right to remain silent. United States v. Morado, 454 F.2d 167, 173 (5th Cir. 1972).[1] However, it created an exception that when a person ceases to be merely a witness in a general investigation and the inquiry has focused upon him, he is virtually in the position of a defendant and entitled to the full warning of rights mandated by *Miranda.*[2]

In *Mandujano* a federal narcotics agent had reported that he had given the defendant $650.00 for an attempted purchase of heroin. Mandujano was then called before the grand jury and

1. *See also,* Robinson v. United States, 401 F. 2d 248 (9th Cir. 1968); United States v. DiMichele, 375 F.2d 959 (3rd Cir. 1967); United States v. Winter, 348 F.2d 204 (2d Cir. 1965); United States v. Parker, 244 F. 2d 943 (7th Cir. 1957); United States v. Scully, 225 F.2d 113, 116 (2d Cir. 1955).

2. The Fifth Circuit in Brown v. Beto, 468 F.2d 1284, 1286 (5th Cir. 1972), set forth the factors to be considered in determining whether a person is subject to custodial interrogation:
   "Before law enforcement officers can subject a citizen to custodial interrogation, he must first have been given the *Miranda* warnings. In *Miranda* 'custodial interrogation' was defined as 'questioning initiated by law enforcement officers after a person has been

taken into custody or otherwise deprived of his freedom of action in any significant way.' This court has yet to formulate a general rule for distinguishing custodial from non-custodial interrogation but instead has preferred to take a case-by-case approach. * * * In making the distinction between custodial and non-custodial interrogation, this court has singled out certain criteria as having special significance; these include probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation. Although none of these factors is alone determinative, we have recently indicated that the most compelling is whether or not the focus of the investigation has finally centered on the defendant." (footnotes omitted)

questioned about the sale. He denied any knowledge concerning such a sale, and was subsequently indicted for perjury. The Court of Appeals noted that the trial court had found:

> "that the government had focused upon Mandujano as someone whom the government had knowledge of having committed a crime, as a person whom the government had planned to indict as it had one eye on prosecution, and against whom it was gathering incriminating evidence. Also the discussion indicates that the trial court found that when Mandujano was brought into the grand jury room, the government then knew that an affirmative answer to questions put to him would amount to a confession of guilt of trafficking in heroin." *Supra,* 496 F. 2d at 1053.

On these facts, the court held that Mandujano was a putative defendant in custody and was entitled to *Miranda* warnings. A consideration of the circumstances of the case before us demands a similar conclusion.

The federal grand jury was investigating public bribery of inspection officials at the New Orleans docks. The grand jury subsequently returned indictments against several individuals for improper payment or receipt of money, and all have pled guilty.

The government was aware, when Timonet was called before the grand jury, that he had been offered $2,500.00 to certify a ship, the M/V VIRGO, which he was charged with inspecting. Assistant United States Attorney Cornelius R. Heusel, who questioned Timonet before the grand jury, testified at trial that he had information from a Mr. Scallan and a Mr. Claiborne that Timonet had been offered $2,500.00 to certify the M/V VIRGO and he had agreed to accept it. And the questioning before the grand jury was focused directly on this transaction:

> "Q. Have you ever received any money at all other than your salary from the Delta Weighing? Have you received any money from any outside source other than Delta Weighing?
>
> "A. No.
>
> "Q. Have you ever received money from Delta Weighing that was not a direct—either a Christmas bonus or earned salary?
>
> "A. No, only earned salary and Christmas bonuses is all.
>
> "Q. Did you handle the ship, the Virgo?
>
> "A. Yes.
>
> "Q. Who was the boarding agent on that ship?
>
> "A. Let me see, I really—I don't remember.
>
> "Q. Do you recall who else went aboard with you on the Virgo?
>
> "A. The Cargo Bureau man.
>
> "Q. Do you remember who he was?
>
> "A. Yeah, Warren.
>
> "Q. Did you ever hear any discussion regarding payoffs on the Virgo?
>
> "A. No.
>
> "Q. Were you offered any money to pass the Virgo?
>
> "A. No, the only thing I did on the Virgo—now, it is not exactly by regulations, but I passed it before I went on the ship. I wrote out the pass passing it, because there was an element of time involved. The ship had to be filed in Reserve, Louisiana before 12:00 o'clock, and I think it was about 10:00 o'clock or so when I was there in New Orleans here, so I wrote out the pass at the dock and gave it to the agent and—
>
> "Q. Who did you give it to?
>
> "A. Let me see, it was Scallan, if I remember."

The Court thus finds that the investigation had focused upon Timonet at the time of his questioning, and he was virtually in the position of a defendant. As such, under *Mandujano,* he was entitled to *Miranda* warnings.

It is equally clear that in the case before us, Timonet was not given the full panoply of warnings required by

*Miranda.* He was informed that he had a right to a lawyer, and said that he did not want one; however, he was at no time told that he was entitled to an attorney free of charge if he were not financially able to retain one.[3] This is the same infirmity underlying the suppression of defendant's statements in *Mandujano, supra,* 496 F.2d at 1051, n. 1.

The more serious question would be whether suppression of defendant's statements is an appropriate remedy for failure to give *Miranda* warnings where the statements made amount to perjury. But, after a thorough discussion that question has been answered in the affirmative by *Mandujano,* and we do not dwell on it at length here.

The problem is that in most cases where *Miranda* warnings are not given, what is suppressed is defendant's statement relating to the commission of a past crime. In a perjury indictment, however, the statement suppressed is not mere evidence of a past crime, but forms the very basis of the crime itself. Prior decisions of the Fifth Circuit have stated *in dicta* that where witnesses had committed perjury before a grand jury, they could not. rely on the protection of the Fifth Amendment to prevent prosecution. United States v. Orta, 253 F.2d 312 (5th Cir. 1958).[4] The basis for this decision is that the protection of the Fifth Amendment relates only to crimes alleged to have been committed prior to the time when the testimony is sought. United States v. Orta, *supra,* at 314.

The court distinguished *Orta* as not involving a putative defendant. It held that suppression of statements forming the basis of a perjury indictment must at times be suppressed:

"As heinous as the crime of perjury is under our law, and as correct as the *Orta* principle is, that a witness uninformed of his constitutional rights generally should not be afforded a license to commit perjury, under our law we simply cannot ignore the unfairness in baiting this defendant before the grand jury and overlook the principle that the Fifth Amendment must always be as broad as the mischief against which it seeks to guard. In order to deter the prosecuting officers from bringing a putative or virtual defendant before the grand jury, for the purpose of obtaining incriminating or perjurous testimony, the accused must be adequately apprised of his rights, or all of his testimony, incriminating and perjurous, will be suppressed. In order to combat these methods the Fifth Amendment privilege must be fully honored in this situation. This end entails only slight erosion of the general principle announced in *Orta.* This deviation in the situation of a putative defendant uninformed of his *Miranda* rights and called for the purpose of obtaining incriminating or perjurous testimony is necessary to counteract the fundamental unfairness of allowing a defendant to be faced by such a Hobson's choice." United States v. Mandujano, *supra,* 496 F.2d at 1056–1057.

---

3. The following dialogue occurred at trial between the Court and Assistant United States Attorney Heusel:

"Q. Let me ask you this: did you ask him outside of the grand jury room whether he was financially able to retain an attorney?

"A. No, your honor. He was employed, fully employed at the time. I did not ask if he—I asked him if he wanted an attorney, and I believe I asked him that in the grand jury room. He indicated that he did not. I told him not to say anything because I didn't want him to make any statements to me outside.

"Q. My other question is: did you in any way indicate to him that if he was financially unable to retain counsel, that the Court would appoint him counsel, an attorney, without charge to him? Did you ask him that outside the grand jury room?

"A. No, sir, I did not."

4. *See also,* United States v. Glasco, 488 F.2d 1068 (5th Cir. 1974); United States v. Daniels, 461 F.2d 1076 (5th Cir. 1972); United States' v. Wilcox, 450 F.2d 1131 (5th Cir. 1971); Stassi v. United States, 401 F.2d 259 (5th Cir. 1968).

It is not, however, readily apparent from the Fifth Circuit's opinion, particularly the portion quoted above, if the standard for determining whether a given statement should be suppressed is coincidental with the standard for determining whether a grand jury witness is a putative defendant. In other words, are all putative defendants entitled to have their statements before a grand jury suppressed, unless they were preceded by full *Miranda* warnings, or are only a certain subclass of putative defendants so entitled?

On the one hand, the court appears to focus on the particular circumstances of the case before it. It refers to the proceedings as "beyond the *pale of permissible prosecutorial conduct*." United States v. Mandujano, *supra* at 1058 (emphasis in original); it notes the "court's duty of supervision 'in the interest of fairness,' " *id*. at 1056; it makes a slight inroad into the *Orta* principle "where a totally unfair procedure is put in train," *id*. at 1058. In addition, the court bases its holding in part upon the due process clause of the Fifth Amendment, quoting the fundamental fairness test of Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 86 L.Ed. 1595 (1941), overruled on other grounds, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1962), which emphasizes the totality of facts in a particular case.

Elsewhere, the court seems to place primary reliance on the fact that Mandujano is a putative defendant entitled to *Miranda* warnings, without an inquiry into any additional special circumstances. That is the basic ground upon which United States v. Orta, *supra*, is distinguished.

■ We do not think that the Fifth Circuit meant to create two separate tests, one to determine whether a defendant is entitled to *Miranda* warnings and a second to determine whether statements should be suppressed for lack of such warnings. Such a dual test would be needlessly academic and distinctions between the two tests would be unworkable in practice. The far better course is to hold, as we think *Mandujano* does, that whenever a person is a putative defendant entitled to *Miranda* warnings, statements made by him in the absence of such warnings must be suppressed.

■ We square the Court of Appeals' emphasis on the particular facts of the case before it as directed toward determining whether or not a particular grand jury witness is a putative defendant. Once that determination is made, and sufficient warnings not given, suppression automatically follows. Accordingly, if the decision in *Mandujano* applies to the case at bar, the Court is required to suppress his statements made before the grand jury.

## II. Retroactivity of *Mandujano*

■ Because of the dates involved in the case at bar, we must necessarily resolve the issue of the retroactivity of *Mandujano*. The questioning of Timonet before the grand jury took place on April 30, 1974, before the Court of Appeals' decision in United States v. Mandujano, *supra*, but Timonet's trial, at which his grand jury testimony was sought to be introduced, took place afterwards.

To paraphrase Mr. Justice Frankfurter's remarks concerning another troublesome area of the law, "[t]he course of the Supreme Court's retroactivity law has not run smooth." [5] Certain of the Supreme Court's decisions have been held fully retroactive. Some were so held because they affected the integrity of the factfinding process, e. g., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963); others, because they affected the very jurisdiction of the court to proceed, e. g., Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) held retroactive by Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973).

5. Chapman v. United States, 365 U.S. 610, 618, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (Frankfurter, J., concurring).

Of those opinions holding prior decisions not fully retroactive, at least three separate approaches can be discerned. In one group, a new constitutional rule of criminal procedure has been held applicable to all cases in which direct review had not come to an end at the time the particular rule was announced. *E. g.*, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), holding Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), partially retroactive; Tehan v. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1965), holding partially retroactive Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). In other cases, rules of procedure were held applicable to cases in which the trial began after the date of the decision announcing the new rule. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), holding Miranda v. Arizona, *supra*, prospective only. In still other cases, rules regarding police practices were held applicable only to cases in which the practices occurred after the dates of those decisions. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), holding prospective lineup rules announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).[6]

We are forced to admit that we can "only dimly perceive the lines of demarcation" between these categories of cases.[7] But in deciding whether to apply the Court of Appeals' decision in *Mandujano* to the case before us, we must analogize to the line of Supreme Court cases which presents the closest parallels. The retroactivity determination should be made in two separate steps:

first, whether the case is to be held fully retroactive, and if not, what is the relevant date for prospective application.

■ Our analysis begins with a consideration of the Supreme Court's opinion in Johnson v. New Jersey, *supra*. That opinion held that *Miranda* applies only to cases in which the trial began after the date of decision in *Miranda*.[8] In deciding the question of retroactivity, the Court considered the now familiar criteria first enunciated in Linkletter v. Walker, *supra*: (a) the purpose served by the new rules, (b) the extent of the reliance by law enforcement authorities on prior standards, and (c) the effect on the administration of justice of a retroactive application of the new rules.

In applying the first criterion, the Court noted that one purpose of the *Miranda* warnings was to provide a broad prophylactic rule to assure full effectuation of the privilege against self-incrimination. Non-retroactivity would not result in possibly unreliable statements being introduced at trial because well established law on coerced confessions would serve to preclude such statements. Secondly, the Court acknowledged that its holding in *Miranda* was a break with the past. Law enforcement agencies had justifiably relied on prior cases, which did not mandate the warnings since required. Thirdly, a holding of retroactivity would result in a disruption of the administration of the criminal laws because it would require retrial of many prisoners who were found guilty by evidence fairly thought to be trustworthy. *Id.*, 384 U.S. at 729–732, 86 S.Ct. 1772.

United States v. Mandujano, *supra*, involved a particular application of the *Miranda* warnings, and a holding of

---

6. *See*, Michigan v. Tucker, 417 U.S. 433, 458 n. 4, 94 S.Ct. 2357, 2371, 41 L.Ed.2d 182 (1974) (Brennan, J., concurring).

7. Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

8. Johnson v. New Jersey, *supra*, also held that Escobedo v. Illinois, 378 U.S. 478, 84

S.Ct. 1758, 12 L.Ed.2d 977 (1964), likewise applies to cases in which trials had not begun when *Escobedo* was announced. But since we are not here concerned with *Escobedo*, we refer to Johnson throughout only for its *Miranda* holding.

non-retroactivity is required by *Johnson v. New Jersey, supra.* A consideration of the first and third of the retroactivity criteria require the same conclusion as in *Johnson*: little purpose would be served by applying *Mandujano* retroactively, and the effect on the administration of justice would be severe. In fact, the effect would be much more severe than that envisioned in *Johnson* as illustrated by the result in the case at bar. For, in *Mandujano*, the statements made before the grand jury are not mere evidence of a prior crime, but form the very basis of the crime of perjury. To suppress such statements would result not in retrial of the defendant, but in a verdict of acquittal.

Nor can it fairly be said that the assistant United States attorney could anticipate the court's holding in *Mandujano*. If the Fifth Circuit's holding was nothing more than a direct and obvious application of *Miranda* to a particular fact situation, then it surely would govern all post-*Miranda* cases. But such is not the case.

While other circuits have adopted the "virtual defendant" perspective prior to *Mandujano, e. g.,* United States v. Luxenburg, 374 F.2d 241 (6th Cir. 1967), the Fifth Circuit did not. It expressly reserved that question in its earlier opinions. In *Mandujano* itself, 496 F.2d at 1053, the court noted that it had "recently pretermitted the question of the scope of *Miranda* in the context of a putative defendant before a grand jury investigation, United States v. Morado, 454 F.2d 167 (5th Cir. 1972)."

In United States v. Marado, *supra* 454 F.2d at 173, the court stated:

"Without intimating whether this circuit will agree with this 'virtual defendant' perspective, we note that its emphasis is upon the same factor we have considered to be of prime importance in determining whether or not a man is 'in custody' as that term is used in *Miranda*: has the 'focus' of the investigation centered upon him? (citations omitted) *If the investigation in the case at bar had passed beyond the stage of being a general inquiry* into an unsolved crime or a suspected conspiracy, and had focused upon Solis as a defendant whom the government planned to indict and against whom it was gathering incriminating evidence, *we would face the necessity of embracing or rejecting this rule.*" (emphasis added)

Thus, when the assistant United States attorney questioned Timonet before the grand jury without warning him of all his *Miranda* rights, he was acting within the law of the Fifth Circuit as it then existed. It is clear that the second of the retroactivity criteria—reliance by law enforcement authorities on the prior standards—also requires a holding of non-retroactivity.

Having decided that *Mandujano* is not to be applied retroactively, we must still face the question as to what stage in the process of criminal cases it is to be prospectively applied. The answer appears to be squarely governed by Johnson v. New Jersey, *supra.* That opinion held, as noted above, that *Miranda* applies only to cases in which the trial began after the date of decision in *Miranda*. Since *Mandujano* is merely an application of *Miranda,* albeit a new one, to a particular category of cases, and the Supreme Court has provided no general criteria (as they have in determining retroactivity generally) by which we can independently decide whether a decision is to be applied prospectively according to the date of trial or date of the investigative practice in question, we feel bound by the Supreme Court's opinion in *Johnson.* Therefore, we hold that the Fifth Circuit's opinion in United States v. Mandujano, *supra,* applies to all cases in which the trial began after June 28, 1974, the date of decision. Since full *Miranda* warnings were not given to Timonet prior to his testimony before the grand jury, when he was in the position of a putative defendant, his testimony must be suppressed, upon timely motion by defense counsel.

We reach this conclusion with great reluctance, for it is contrary to logic,

and to the trend of recent opinions of the Supreme Court. But as the Supreme Court noted in Jenkins v. Delaware, 395 U.S. 213, 218, 89 S.Ct. 1677, 1680, 23 L.Ed.2d 253 (1969), " 'there is a large measure of judicial discretion involved in deciding . . . the time from which the new principle is to be deemed controlling.' State v. Vigliano, 50 N.J. 51, 65–66, 232 A.2d 129, 137 (1967)." But that discretion rests with the Supreme Court, not with us, and once that Court has determined such a time, we are duty bound to follow it in an analogous case.

We have considered two possible arguments to distinguish Johnson from the present case, and we reject both of them. The first is based on dicta stated in Jenkins v. Delaware, supra. The Court volunteered an explanation of why the Johnson court chose the time of trial, rather than the time of questioning, as the relevant focus for prospective application of Miranda: since defendants who had made pre-Miranda confessions had not yet gone to trial and the police investigations into those cases presumably were still fresh, Johnson envisioned that "no undue burden would be imposed upon prosecuting authorities by requiring them to find evidentiary substitutes for statements obtained in violation of the constitutional protections afforded by Miranda." Jenkins v. Delaware, supra, 395 U.S. at 219–220, 89 S. Ct. at 1681; Michigan v. Tucker, 417 U. S. 433, 456, 94 S.Ct. 2357, 2370, 41 L.Ed. 2d 182 (1974) (Brennan, J., concurring).

But if this is the rationale, so the argument goes, then a holding that Mandujano applies to trials not yet begun as of its date of decision creates a much more severe burden on prosecutors. For when the statements to be suppressed form the basis for a perjury indictment, no "evidentiary substitutes" exist.

The problem with this argument is that Johnson was never based on the existence of evidentiary substitutes. The Jenkins opinion refers to it only as an "[i]mplicit . . . assumption." Id., 395 U.S. at 219, 89 S.Ct. 1677. The Court in Johnson never focused on the question whether the date of the investigative practice was a preferable time for prospective application of Miranda to the date of trial. Rather, the Court simply assumed that the alternative to applying Miranda to all non-final cases was to apply it to trials begun after the Miranda decision was announced.[9] It simply strains the Johnson decision too much for us to adopt a rationale for the Supreme Court's undiscussed choice of dates (as between date of trial and date of questioning) and then distinguish the case before us on the basis of that rationale.

The short answer to this argument is simply that, as noted above, a court is given wide discretion as to choice of dates for prospective application of a given decision. Once the Supreme Court made that choice, our decision in an analogous case is bound by it.

A second argument is based on the Supreme Court's recent decision in Michigan v. Tucker, supra. The case involved questioning of defendant which took place prior to the Court's decision in Miranda, but a trial which took place afterward. Full Miranda warnings were not given. During the questioning of defendant concerning a rape and assault, defendant told police that he was with one Robert Henderson at the time of the incident. When police contacted Henderson, they found that his version tended to discredit the defendant's account. Henderson was allowed to testify at defendant's trial, defendant was convicted, and the Supreme Court held Henderson's testimony admissible.

Tucker is inapplicable to the present case for two major reasons. First, Tucker is not a case concerning the retroactivity of a prior decision of the Su-

---

**9.** "The question remains whether Escobedo and Miranda shall affect cases still on direct appeal when they were decided or whether their application shall commence with trials begun after the decisions were announced." Johnson, supra 384 U.S. at 732, 86 S.Ct. at 1780.

preme Court. As the majority opinion points out, no prior decision has resolved the question of whether the fruits of a *Miranda*-violative confession may be submitted into evidence. Michigan v. Tucker, *supra,* 417 U.S. at 452–453 n. 26, 94 S.Ct. at 2368. Thus, the majority rejects the position of the concurring opinion, which treats *Tucker* according to the established retroactivity framework, as a "significant and unsettling departure" from the Court's retroactivity decisions. Id. *Tucker* is not a retroactivity decision as that term is usually used, and does not affect the framework of retroactivity criteria. In the case at bar, in contrast, we are squarely faced with the retroactivity *vel non* of a decision of an appellate court.

Secondly, crucial to the decision in *Tucker* is the fact that the statements suppressed were statements of a third party which were the fruit of defendant's statements, and not the statement of defendant himself. In fact, the statements actually made by defendant were excluded at trial in accordance with Johnson v. New Jersey, *supra.* The Court merely held that neither the need to deter future police conduct nor the need to exclude untrustworthy evidence would be served by excluding from trial a statement of a third party subject to no custodial pressures whose name was mentioned during *Miranda*-violative questioning of defendant. By contrast, the statement sought to be excluded in Timonet's trial was, of course, directly incriminating.

Having decided that we are bound by *Johnson,* we simply point out that the decision is both illogical and contrary to the trend of the Supreme Court's later opinions. Making the relevant time

for retroactivity the date on which the trial began rather than the date on which the investigative practice occurred serves very little purpose. Timonet's questioning before the grand jury occurred on April 30, 1974, nearly two months prior to the Fifth Circuit's opinion in *Mandujano*. The assistant United States attorney questioning Timonet on that date fully complied with all decisions of that court and the Supreme Court. In fact, by warning Timonet of his right to a lawyer, and his right against self-incrimination, he went beyond the practices required of him. His sole fault was that he was not prescient enough to predict rulings of the Court of Appeals.[10]

Once it has been determined that a new constitutional rule does not so affect the integrity of the factfinding process that it requires retroactive application, the far better course is to provide that it apply prospectively only to those cases in which the investigative practice in question occurred after the date of decision. Such a holding would not penalize conscientious policemen and prosecutors, and it would still satisfy the purposes of whatever rule was being adopted by penalizing only those persons who disregarded it.[11] As Mr. Justice Schaefer has observed:

"Sound growth can be promoted and erratic results avoided by focusing attention on the element of reliance that justifies the technique. Even when that is done there will not always be agreement as to the quality or degree of reliance that justifies a particular prospective limitation. But the area of disaffection will be narrowed if time before and time after are measured from the moment of re-

---

10. By holding that Timonet's statements are not now admissible at trial, we of course imply no criticism of the assistant United States attorney.

11. There has been some question whether the exclusionary rule deters police from illegal practices, because the disposition of a particular case in which an officer made a search or interrogation is rarely made known to him,

and the police goals and measure of success often have little to do with the rate of conviction. *See,* Kaplan, The Limits of the Exclusionary Rule, 26 Stan.L.Rev. 1027, 1032–33 (1974). But where questioning before a grand jury is involved, the focus of the *Miranda* rules is on a fellow prosecutor, who is acutely responsive to the concerns of the rules and the results that his practices have.

liance." Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L.Rev. 631, 646 (1967).

The trend of the Supreme Court's retroactivity decisions has been in this direction. The history of the Supreme Court's struggles with retroactivity began with Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (holding Mapp v. Ohio, *supra*, nonretroactive) and Tehan v. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) (holding Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) nonretroactive). Both of these cases applied the substantive decision to cases still on direct appeal when they were decided.

In Johnson v. New Jersey, *supra*, the Court was concerned with the question of whether *Miranda* should likewise affect cases still on direct appeal when it was decided. In rejecting that position, the Court simply assumed without discussion that the alternative was to apply *Miranda* commencing with trials begun after the decision was announced. *Supra*, 384 U.S. at 732, 86 S.Ct. 1772. Never was the possibility that *Miranda* could apply as of the date the questioning occurred even considered.

It was only with Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1971), holding the line-up rules announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), nonretroactive, that the Court first used the date of the practice in question as the relevant date for prospective application. This use of the date of the police practice for retroactivity purposes was continued in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). That case held that Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), is to be applied only to cases in which the prosecution seeks to introduce the fruits of electronic surveillance conducted after the date of the *Katz* decision. Finally, Williams v. United States, 401 U.S. 646, 656, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), held that Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), is to be applied only to cases involving the admissibility of evidence seized in searches occurring after the date of decision in *Chimel*.[12]

Surprisingly, this change from the date of trial to the date of the investigative practice as the relevant time for giving retroactive effect to decisions has occurred almost imperceptibly by the Supreme Court. Despite the fact that the issue of retroactivity has been subject to much debate in the cases [13] and law reviews,[14] the decision to determine prospective application from which of the two dates listed above has received little discussion.[15] Yet the selection of

12. *But see*, Fuller v. Alaska, 393 U.S. 80, 81, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968) (holding that Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968), which ruled evidence seized in violation of Section 605 of the Federal Communications Act, 47 U.S.C. § 605, inadmissible in state trials, applicable to all cases in which the evidence was introduced after the date of decision in *Lee*).

13. *See, e. g.*, Michigan v. Payne, 412 U.S. 47, 59, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973) (Marshall, J., dissenting) ; Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971) (plurality opinion of White, J.) ; Mackey v. United States, 401 U.S. 667, 675, 91 S.Ct. 1160, 28 L.Ed. 2d 404 (1971) (Harlan, J., dissenting) ; De-

sist v. United States, 394 U.S. 244, 256, 269, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (dissenting opinions of Harlan and Fortas, JJ.) ; Linkletter v. Walker, 381 U.S. 618, 640, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (Black., J., dissenting).

14. See the articles compiled in Williams v. United States, *supra* 401 U.S. at 651, n. 3, 91 S.Ct. 1148.

15. The Supreme Court focuses on the question of reliance by police and prosecutors on prior standards in determining the initial question of whether a decision ought to be given retroactive effect. *See, e. g.*, Johnson v. New Jersey, *supra*, 384 U.S. at 731, 86 S.Ct. 1772; Fuller v. Alaska, *supra*, 393 U.S. at 81, 89 S.Ct. 61. However, in both these cases, once the decision not to give re-

one date for prospective application rather than the other may determine the outcome of a case, as it has in the situation before this Court.

The holding of *Johnson* that *Miranda* applies only to trials begun after the date of decision in that case now seems an anomaly in the law of retroactivity. Nevertheless, we are bound by it, and in determining the retroactivity of *Mandujano*, we feel compelled to reach the same result.

troactive effect was made, the Court seemingly ignored this concern in choosing a date for prospective application.

Even in cases in which the date of the investigative practice was chosen as the date from which to give prospective application to a decision, this choice was made without any explicit reference to the factor of good faith reliance. *E. g.*, Williams v. United States, *supra*; Stovall v. Denno, *supra. But see*, Desist v. United States, *supra*, 394 U.S. at 253, 89 S.Ct. 1030.

Only recently has the significance of the date of the investigative practice been commented on by the Court. It has recognized that the selection of that date for prospective application is "more consistent with the fundamental justification for not applying newly enunciated constitutional principles retroactively." Jenkins v. Delaware, *supra*, 395 U.S. at 218–219, n. 7, 89 S.Ct. at 1680. *See*, Michigan v. Tucker, *supra*, 417 U.S. at 458–459, n. 4, 94 S.Ct. at 2371–2372 (Brennan, J., concurring).