RAGANSKY v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. August 13, 1918.)

No. 2605.

1. HOMICIDE ⬅92—THREATS AGAINST LIFE OF PRESIDENT—DEFENSE—JOKE.
   It is no defense to prosecution, under Act Feb. 14, 1917 for threatening to take the life of the President, that the language was used as a joke; it not being claimed that those present so understood, or were intended to so understand.

2. HOMICIDE ⬅92—THREATS AGAINST LIFE OF PRESIDENT—"KNOWINGLY"—"WILLFULLY."
   Within Act Feb. 14, 1917, denouncing the offense of knowingly and willfully threatening to take the life of the President, a threat is "knowingly"

made, if the maker comprehends the meaning of the words used, and "willfully" made, if, in addition to comprehending their meaning, he voluntarily and intentionally utters them as the declaration of an apparent determination to carry them into execution; a bad purpose is not necessary.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Knowingly; Willfully.]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Walter Ragansky was convicted of threatening the life of the President, and brings error. Affirmed.

Seymour Stedman, of Chicago, Ill., for plaintiff in error.

Charles F. Clyne and Robert T. Neill, both of Chicago, Ill., for the United States.

Before MACK and EVANS, Circuit Judges.

MACK, Circuit Judge. The sole question for consideration on this writ of error to reverse a judgment based upon a verdict of guilty under all three counts of an indictment for knowingly and willfully making threats to take the life of the President of the United States is the construction of the Act of February 14, 1917 (39 Stat. 919, c. 64) copied in the margin.[1]

Concededly, the language charged to have been used by defendant in and of itself constituted such a threat; that specified in the first count was "I can make bombs and I will make bombs and blow up the President"; in the second, "We ought to make the biggest bomb in the world and take it down to the White House and put it on the dome and blow up President Wilson and all the rest of the crooks, and get President Wilson and all of the rest of the crooks and blow it up;" in the third, "I would like to make a bomb big enough to blow up the Capitol and President and all the Senators and everybody in it." The demurrer and motion to quash, not shown in the record, as well as the motion in arrest of judgment, were therefore properly overruled.

[1] While the testimony is not preserved, it appears, from the statement of the judge in overruling a motion for a new trial, that "there was a claim by this defendant and testimony in corroboration of his claim that he was joking, that he was not in earnest, that he did not intend to kill him."

The court instructed the jury that "the claim that the language was used as a joke, in fun," is not a defense. It was not claimed that every one present understood that he was joking, or that he intended them so to understand; the claim appears to have been that defendant

---

1 "Any person who knowingly and willfully deposits or causes to be deposited for conveyance in the mail or for delivery from any postoffice or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of or to inflict bodily harm upon the President of the United States, or who knowingly and willfully otherwise makes any such threat against the President, shall upon conviction be fined not exceeding $1,000 or imprisoned not exceeding five years, or both."

had no intention to carry out his threat, and that, therefore, it was a joke; the instruction read in the light of the entire charge must be so construed, and in our judgment it was correct.

[2] A threat is knowingly made, if the maker of it comprehends the meaning of the words uttered by him; a foreigner, ignorant of the English language, repeating these same words without knowledge of their meaning, may not knowingly have made a threat.

And a threat is willfully made, if in addition to comprehending the meaning of his words, the maker voluntarily and intentionally utters them as the declaration of an apparent determination to carry them into execution.

Defendant, while conceding that an intention actually to carry out the threat or the President's knowledge of the threat is not essential, contends that the language must be used with an evil or malicious intent to express a sentiment to be impressed upon the minds of persons through which it might create a sentiment of hostility to the security of the President, "that willfully implies an evil purpose—legal malice."

Waiving defendant's failure properly to except to the charges (his exception was general to the court's construction of the act), his present contention cannot be sustained, if by evil purpose or legal malice, more is meant than an intention to give utterance to words which, to defendant's knowledge, were in form and would naturally be understood by the hearers as being a threat; that is, the expression of a determination, whether actual or only pretended, to menace the President's safety.

While under some circumstances, the word "willfully" in penal statutes means not merely voluntarily, but with a bad purpose (Spurr v. United States, 174 U. S. 728, 19 Sup. Ct. 812, 43 L. Ed. 1150; Potter v. United States, 155 U. S. 446, 15 Sup. Ct. 144, 39 L. Ed. 214), nothing in the text, context, or history of this legislation indicates the materiality of the hidden intent or purpose of one who, in the presence of others, voluntarily uses language known by him to be in form such a threat, and who thus, to some extent endangers the President's life (United States v. Stickrath [D. C.] 242 Fed. 151; United States v. Clark, 250 Fed. 449, —— C. C. A. —— [April 1, 1918, C. C. A. 5th Circuit]).

Judge KOHLSAAT concurred in these conclusions, but died before the opinion was written.

Judgment affirmed.