William M. **JOHNSON** and **Walter** O'Neal, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 17655.

United States Court of Appeals Fifth Circuit.

Dec. 14, 1959.

Rehearing Denied Jan. 14, 1960.

Fred S. Rizk, M. H. Myerson, Wayne E. Ripley, Jacksonville, Fla., for appellants.

John L. Briggs, U. S. Atty., E. Coleman Madsen, Chf. Asst. U. S. Atty., Jacksonville, Fla., James L. Guilmartin, U. S. Atty., Southern District of Florida, Jacksonville, Fla., for appellee.

Before HUTCHESON, TUTTLE and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Appellants, William Johnson and Walter O'Neal, were convicted on a one-count indictment for possession on May 18, 1955, of 125 gallons of nontaxpaid distilled spirits. 26 U.S.C.A. § 5008. They were also indicted, along with Robert Branch, for a conspiracy to carry on the business of dealing in spirituous liquors in violation of the law. The two cases were consolidated for trial. At the close of the evidence, the district court required the Government to dismiss either O'Neal or Branch from the conspiracy charge. The Government elected to abandon its conspiracy charge against O'Neal. A verdict of not guilty was returned on the conspiracy charge against Johnson and Branch. A verdict of guilty was returned against Johnson and O'Neal on the substantive charge of unlawful possession. Johnson was sentenced to three years imprisonment and O'Neal to nine months imprisonment. We affirm the judgment below.

## I.

Appellant Johnson contends that the evidence was insufficient to show that he was guilty of unlawful possession.

The defendants were convicted largely on the testimony of one William Spigener, a Government agent. He testified to two events, one on May 11 and one on May 18, 1955.

Spigener testified that on May 11 he and an informer, Ray Richardson, met Johnson at Francis' Grill on Highway 90, west of Jacksonville. They asked him if he had any whiskey. Johnson answered, "How much do you want?" They said, "Twenty-five jugs." Johnson said that he did not have twenty-five jugs but he had twenty jugs "stashed" near Baldwin, Florida. They agreed to meet at Johnson's house in Baldwin at two o'clock that afternoon. When they met in the afternoon Robert Branch was present. He had been working some three years for Johnson. After a short private conversation between Branch and Johnson, Branch got in his car and led Spigener and Richardson, in their car, to a point about five miles north of Baldwin, then turned down a dirt road to a place where he stopped and exchanged his car for the agents' car. Two hours later he returned in the government car along with twenty five-gallon jugs of nontaxpaid whiskey. Spigener paid Branch $200 for the whiskey.

On May 18, in company with Richardson and James Hill, a State Beverage agent, Spigener went to Johnson's home. Earlier in the day, Richardson had telephoned Johnson and had made arrangements to meet him. Johnson arrived in a Chrysler and announced that "the boy" (O'Neal) would be there in a few minutes. O'Neal arrived at about 7:40 P.M., driving a Cadillac. Johnson then said that O'Neal would take the government car and load it. He instructed Spigener, Richardson, and Hill to use his 1957 Ford. This was the same car Branch had used on May 11. There were no license plates on the car. The plates were under the seat, but Johnson was unable to find anything with which to put the license plates on the car. Johnson then said that they would go over in his Cadillac. He led the way. Spigener and the agents followed in the Cadillac. They drove a distance on Highway 90, turned into a dirt road, drove down that road for a mile and a half, turned and drove down another dirt road for about 300 yards, and pulled over to the side of the road and stopped. Johnson exchanged cars again with Spigener and then left in the Cadillac, after stating that "the boy" would be along in a few minutes with the whiskey. O'Neal arrived shortly in the government car. It contained twenty-five five-gallon jugs of nontaxpaid whiskey. Spigener asked the boy if Johnson wanted the payment to be made to him. O'Neal replied "Yes". Spigener then held a light while Hill counted out $250 into O'Neal's hands.

Johnson's defense was that he had not been selling whiskey for six or seven years; his business was selling used cars. Richardson begged Johnson to sell him whiskey (for resale), because he was desperate to make some money to pay

doctors' bills and hospital bills for his sick mother. Johnson said that he refused to sell; all he did was to help Richardson out by introducing him to Branch. He denied that he was present or that he participated in any way in the May 18 sale; denied that the events showing his participation had occurred.

The case required the jury to believe Johnson or to believe Spigener. As we see it, the conversation between Johnson and Spigener on May 11, the use of Johnson's residence as the focus for negotiations and as a base of operations, the use of Johnson's automobiles as an integral part of the mechanics of the possession and sale, the relation between Johnson and O'Neal, Johnson's part in leading the agents to the pick-up point where the whiskey was delivered, and the record as a whole constitute substantial evidence to support the jury's belief in Spigener and its verdict against Johnson. Hargrove v. United States, 5 Cir., 1944, 139 F.2d 1014.

## II.

Appellants contend that the district court erred in denying their motion for acquittal on the conspiracy charge. The indictment alleged one continuous conspiracy from April 1, 1955 to July 27, 1956, but the proof showed two separate and unrelated conspiracies.

Since the defendants were acquitted on the conspiracy charge, there is no merit to the contention. The admissible evidence on the substantive count was sufficient to warrant the conviction, regardless of the evidence introduced to show the alleged conspiracy. In the circumstances of this case, the trial judge's denial of the motion for acquittal and refusal to instruct the jury to disregard any prejudicial testimony introduced to show conspiracy were not reversible error.

1. In a colloquy with the trial judge defense counsel stated that he agreed that there was no question of entrapment as to the substantive case, because the

## III.

Appellants contend that the trial judge in instructing the jury erred in limiting his charge on entrapment to the conspiracy case. There is no merit to this contention. As we read the instructions on entrapment, they are fair, legally correct, and broad enough to apply to the substantive case as well as to the conspiracy case. The issue of entrapment was not raised in the trial of the substantive case. As far as the record shows, however, the district court refused the defendant's requested charge on entrapment only because it was covered in the general charges to the extent that it was applicable.[1]

## IV.

We find no abuse of discretion, no prejudicial error, by the district court in refusing to grant Johnson's motion for severance. The district judge was careful to admonish the jury that a statement by Branch that Johnson wanted him to receive the payment for the whiskey and another statement that Branch had worked for Johnson for three years were not to be considered as evidence of Johnson's guilt. Any statement by O'Neal, of course, would have been admissible against O'Neal in the substantive case, even if a severance had been granted. Considering the record as a whole, the nuances and the small things that might mount up in the jury's mind, we find no unfair climate produced by the lack of severance.

## V.

We have weighed and found wanting appellant's contentions that the court below erred in refusing to give certain requested charges.

Judgment must be

Affirmed.

defendants had denied that the incidents alleged by the government had ever occurred.