**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Franklin David KIRK,
Defendant-Appellant.**

No. 75–1278.

United States Court of Appeals,
Fifth Circuit.

March 19, 1976.

James E. Monnig, San Antonio, Tex.
(Court appointed), for defendant-appellant.

John E. Clark, U. S. Atty., San Antonio, Tex., John M. Pinckney, III, W. Ray
Jahn, Asst. U. S. Attys., for plaintiff-appellee.

Before BROWN, Chief Judge, RIVES
and GEE, Circuit Judges.

RIVES, Circuit Judge:

Franklin David Kirk was convicted on
a one-count indictment charging him
with violation of 18 U.S.C. § 871[1] for
threatening the life of the President of
the United States of America. The district court imposed the maximum sentence of five years' imprisonment. Kirk
appeals claiming reversible error: (1) in
admitting into evidence his prior conviction under 18 U.S.C. § 871; (2) in admitting into evidence the alleged threat
communicated to Secret Service Agents;
(3) for refusing to instruct the jury on
the defense of entrapment; (4) in misconstruing the elements of the offense;
and (5) for refusing to grant a motion
for a pretrial evidentiary hearing.

FACTS

On May 15, 1974, Kirk was arrested by
the Alamo Heights Police Department
for public intoxication while hitchhiking
near San Antonio, Texas. Kirk had been
observed staggering in the highway, his
eyes were bloodshot, his speech was
slurred. The time of this arrest was
3:00 A.M. Kirk reportedly told the arresting officer that politicians had fouled
this country up, but that he was going to
take care of it by killing the President.
Another officer from the Alamo Heights
Police Department, Sergeant Gibson, was
called to the scene. Sergeant Gibson
asked Kirk where he was going. Kirk

[1]. This federal criminal statute reads in part:
"(a) Whoever knowingly and willfully deposits for conveyance in the mail or for a
delivery from any post office or by any letter
carrier any letter, paper, writing, print, missive, or document containing any threat to
take the life of or to inflict bodily harm upon
the President of the United States, the President-elect, the Vice President or other officer
next in the order of succession to the office
of President of the United States, or the Vice
President-elect, or knowingly and willfully
otherwise makes any such threat against the
President, President-elect, Vice President or
other officer next in the order of succession
to the office of President, or Vice President-elect, shall be fined not more than $1,000 or
imprisoned not more than five years, or
both."

replied that he was going to Washington to kill the President. The officers then advised Kirk of his constitutional rights before taking him to the Alamo Heights Police Station. At the station, Sergeant Gibson contacted the United States Secret Service, the agency responsible for protecting the physical safety of the President, and informed its agents of Kirk's statements.

Two Secret Service Agents, Driscoll and Trinidad, arrived at the Alamo Heights Police Station at approximately 3:55 A.M. Agent Driscoll proceeded to interrogate Kirk, asking him what he was doing in San Antonio, Texas, and why he would want to harm the President. Defendant's response was that the President and other politicians were responsible for the bad condition of our country. Agent Driscoll then asked Kirk if there was anything that he could do about it. Defendant responded, "I'll tell you how I'm going to fix things. I'm going to blow the [obscenity's] brains out." It was for this threat alone that Kirk was indicted and convicted.

Defendant prior to his trial filed a motion to suppress the evidence of the alleged threat communicated to the Secret Service Agents and on the date of trial filed a motion for an evidentiary hearing outside the presence of the jury for the purpose of determining the voluntariness and admissibility of any statements allegedly made by him. Neither motion was granted, but each was carried along with the trial on the merits. At trial, Kirk's counsel renewed his motion to suppress as an objection to the proffered testimony of Agent Driscoll of the Secret Service (R. Vol. II at 56–57). This objection was overruled by the court and evidence of Kirk's statement was admitted (*Id.*). The district court also admitted into evidence, over defense counsel's objection, a judgment convicting Kirk

for a previous violation of 18 U.S.C. § 871 (R. Vol. II at 71). That conviction occurred in 1971 in the State of Illinois after Kirk had made a similar threat against the President's life. Finally, the district court refused to give the special jury instructions requested by the defendant, which instructions would have charged the jury on the defense of entrapment in addition to defining the elements of an 18 U.S.C. § 871 offense.

ISSUES

I. Admission of Prior Criminal Conviction

■ Generally, evidence of another crime extraneous to the indictment is inadmissible at trial. A number of exceptions, however, qualify this rule. One of these is the "intent" exception.[2] To admit evidence under this exception, the district court must balance the probative value of the evidence against the possible prejudicial effects resulting from its admission. See, *e. g., United States v. Simmons*, 5 Cir. 1974, 503 F.2d 831, 834; *United States v. Goodwin*, 5 Cir. 1974, 492 F.2d 1141, 1150. *See generally* McCormick, Evidence 447–454 (2d ed. 1974). In a criminal case, intent, of course, must be an element of the crime, and the evidence offered must throw light on the defendant's criminal intent. *Weiss v. United States*, 5 Cir. 1941, 122 F.2d 675, 682. Likewise, the prior criminal offense must be similar to and not too remote from the offense charged. *Id.* Recent cases stress that the evidence must be reasonably necessary to the prosecution's case and that evidence of the prior criminal conduct should be clear and convincing. *United States v. Simmons, supra*, at 835. An even more confining limitation on this exception is the requirement that intent be an issue in the case and not be adequately proved by evidence of the defendant's commis-

---

2. *Weiss v. United States*, 5 Cir. 1941, 122 F.2d 675, 682, *cert. denied* 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550, *rehearing denied* 314 U.S. 716, 62 S.Ct. 478, 86 L.Ed. 570. See also Rule 404(b), Federal Rules of Evidence (1975). Professor Wigmore finds that the rationale for

this exception is based on the doctrine of chance. Juries are to be allowed to make the logical inference that successive, similar occurrences were not the product of chance or abnormality but of intentional design. 2 Wigmore, Evidence § 302 (3d ed. 1940).

sion of acts which carry an evident implication of criminal intent. *United States v. Goodwin, supra,* at 1151. In such a case, evidence of the defendant's commission of a crime not charged in the indictment goes more to the inadmissible purpose of proving that the defendant is a bad man than to the admissible purpose of proving intent. In *Goodwin,* the trial court admitted evidence of a prior criminal conviction, but was reversed on appeal because intent, although an element of the crime charged, had not been seriously disputed at trial. *Id.* at 1152. *See also United States v. Ring,* 6 Cir. 1975, 513 F.2d 1001, 1008; *United States v. Miller,* 7 Cir. 1974, 508 F.2d 444, 450; *United States v. Fierson,* 7 Cir. 1969, 419 F.2d 1020.

Defendant here claims that before his intent had been seriously contested the district court admitted the evidence of his prior conviction. Although lack of criminal intent was Kirk's only defense, this defense was based upon intoxication and not accident, self-defense, or mistake. Defendant claims that evidence of the prior conviction shed no light on his intoxication defense and provided the jury with a very prejudicial impression of his character. Defendant also claims that evidence of his prior crime was not reasonably necessary to the government's case and was too remote in time. Several law enforcement officials could have testified, and in fact did testify, that Kirk was not so intoxicated that he did not know what he was doing.

 The government maintains that it was aware from the outset of the case that defendant would make intent an issue at trial by raising the fact of his intoxication at the time the alleged crime was committed. On this point we agree with the government. It was apparent to both parties before trial that intent would be a disputed issue in this case.[3] Similarly, we believe that a prior conviction is relevant to an intoxication defense. Whether the prior conviction

tended to show that defendant made this threat intentionally or as the result of "alcohol talking," was a matter for the jury's determination. The fact that the former offense occurred three years prior or to the offense charged does not make it so remote as to be excluded. We note that the district judge properly instructed the jury that Kirk's prior conviction could be considered only for the purpose of showing knowledge and intent and not as evidence that the defendant committed the offense.

 In the final analysis, discretion must be given to the trial court on the admissibility of such evidence. *United States v. Fonseca,* 5 Cir. 1974, 490 F.2d 464, 469. This is particularly so where the legal standard is an elastic balancing test. A decision by the trial court to admit this kind of evidence should be upheld on appeal unless an abuse of discretion is found. Under the facts of this case, we cannot say that the district court erred in admitting into evidence Kirk's conviction in 1971 for violating 18 U.S.C. § 871.

## II. Admission of Kirk's Alleged Threat

*Miranda* warnings were given Kirk by the police officers upon his arrest for public intoxication, but these warnings were not repeated by the Secret Service Agents prior to their interrogation of him at the Alamo Heights Police Station. Although the objective of this interrogation was not a "confession," defendant argues that the statements obtained are so analogous that the law of custodial interrogation should apply.

 This Court does not accept that argument. The Fifth Amendment's prohibition against self-incrimination relates to crimes alleged to have been committed prior to the time when the testimony is sought. *Glickstein v. United States,* 1911, 222 U.S. 139, 142, 32 S.Ct. 71, 56 L.Ed. 128, 130; *United States v. Orta,* 5 Cir. 1958, 253 F.2d 312, 314, *cert.*

---

3. In the omnibus proceeding prior to the trial, defendant indicated that intent would be raised as a defense. R. Vol. I, at 42.

*denied* 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed.2d 1156. A person, uninformed of his rights, who testifies and thereby incriminates himself of a crime that has been committed, may assert a .fifth amendment privilege if prosecuted for that crime, but it has been held that he is not free to falsely testify and commit perjury. *United States v. Orta, supra,* at 315. Likewise, the Ninth Circuit in *Guillory v. Wilson,* 9 Cir. 1968, 402 F.2d 34, 36, held that the law of coerced confessions and admissions was inapposite to a case where evidence of a defendant's attempt to bribe the interrogating officers was introduced at trial. Thus, as a general rule it can be said that no fifth amendment problem is presented when a statement is admitted into evidence which is not confessional in nature, but in and of itself constitutes the crime charged.

III. Entrapment

Because his threat on the President's life came in response to questions posed to him by the Secret Service Agents,[4] it was defendant's contention at trial that he was entrapped into committing this offense. Agent Driscoll testified that he asked the question, "Mr. ˙Kirk¦ why would you want to harm the President of the United States?" (R. Vol. II at 56.) Kirk's reply was that the President was responsible for the present economy and was keeping poor people down. Agent Driscoll then asked Kirk if he considered himself a champion of the poor and had he thought of any way to fix the situation of the economy. In response, Kirk said, "I'll tell you how I'm going to fix things. I'm going to blow the [obscenity's] brains out." (R. Vol. II at 57.) Although Kirk requested that the jury be charged on entrapment, the district court refused. We hold that the district court committed reversible error in withholding from the jury the question of entrapment.

In *United States v. Russell,* 1973, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366, the Supreme Court recently reconsidered the law of entrapment as explicated in the decisions of *Sorrells v. United States,* 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and *Sherman v. United States,* 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848. The theory of the entrapment defense as set forth in the majority opinions of *Sorrells* and *Sherman* rests on an inquiry into the predisposition of the accused rather than focusing on the degree of government involvement in the commission of the crime. See *United States v. Russell, supra,* 411 U.S. at 428–430, 93 S.Ct. 1637. The Court declined to overrule those cases, holding steadfastly to the rule that entrapment exists only when the government has implanted the criminal design in the mind of the defendant. Id. at 433, 436, 93 S.Ct. 1637.

 Because the concept of entrapment involves the predisposition of the accused, the question, like all fact questions, is generally one for the jury to decide. See *Sorrells v. United States, supra,* 287 U.S. at 452, 53 S.Ct. 210; *United States v. Riley,* 2 Cir. 1966, 363 F.2d 955, 957. In *Pierce v. United States,* 5 Cir. 1963, 414 F.2d 163, *cert. denied* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425, this Court said:

> "If there is any evidence in the record that, if believed by the jury would show that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it, then, as in all other cases involving questions of guilt or innocence, the jury should be allowed to decide." 414 F.2d at 168.

For decisions in other circuits on the quantum of proof necessary to submit the defense of entrapment to the jury, see *United States v. Watson,* 3 Cir. 1973, 489 F.2d 504, 509; *United States v. Riley, supra,* at 958–959; *Sagansky v.*

---

**4.** It is important to remember that Kirk was not indicted for the earlier threats communicated to the Alamo Heights police officers.

His conviction rests solely on his statement to the Secret Service Agents.

*United States*, 1 Cir. 1966, 358 F.2d 195, 201–203. *See also Strauss v. United States*, 5 Cir. 1967, 376 F.2d 416; *Perez v. United States*, 5 Cir. 1961, 297 F.2d 12.

■ Here, jurors could reasonably have believed that Kirk would not have made *this* threat on the President's life without the leading and suggestive questions posed to him by the Secret Service Agents. On cross-examination, Agent Driscoll testified that all of Kirk's statements were made in direct response to questions and that this questioning occurred from 4:00 A.M. until 5:10 A.M. (R. Vol. II at 63–64.) At 5:10 A.M., Kirk mumbled that he did not want to answer any more questions and lapsed into a state of incoherency. (R. Vol. II at 68.) We find that defendant has met his burden of coming forward with sufficient evidence to show inducement, and that a genuine issue existed as to whether Kirk at the time of his interrogation by the Secret Service Agents was ready, willing, and able to threaten the President's life. See *Pierce v. United States, supra*, at 166–167. In conclusion, we are reminded of the famous statement of Circuit Judge Sanborn in *Butts v. United States*, 8 Cir. 1921, 273 F.2d 35, 38, quoted by the Supreme Court in *Sorrells v. United States, supra*, 287 U.S. at 444–445, 53 S.Ct. at 213.

> "The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it. Here the evidence strongly tends to prove, if it does not conclusively do so, that their first and chief endeavor was to cause, to create, crime in order to punish it, and it is unconscionable, contrary to public policy, and to the established law of the land. . . . "

### IV. Elements of the Offense

■ 18 U.S.C. § 871 requires that a threat on the President's life must be "knowingly and willfully" made. See *n.* 1, *supra*. The district court in instructing the jury on the elements of this offense gave the following charge:

> "A threat is knowingly made if the maker of it comprehends the meaning of the words uttered by him and a threat is willfully made if in addition to comprehending his words the maker voluntarily utters the words as a declaration of apparent determination to carry out the threat." (R. Vol. II at 142.)

This language was taken from the Seventh Circuit opinion in *Ragansky v. United States*, 7 Cir. 1918, 253 F. 643, which was approved by the Fifth Circuit in *United States v. Rogers*, 5 Cir. 1974, 488 F.2d 512, *rev'd on other grounds*, 1975, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1, and followed in *United States v. Hall*, 5 Cir. 1974, 493 F.2d 904. Not all circuits, however, agree with this test. The Fourth Circuit in *United States v. Patillo*, 4 Cir. 1971, 438 F.2d 13 (*en banc*), held that the threat must be made "with a present intention to do injury to the President." 438 F.2d at 15. Defendant requested the district court to give this instruction, and now on appeal asks us to overturn the *Rogers* decision and adopt the test used by the Fourth Circuit. This we cannot do. It is the practice of this Circuit for three-judge panels to abide by a prior Fifth Circuit decision until the decision is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc. We note that the *Rogers* decision was recently reviewed by the Supreme Court on a writ of certiorari. The case was originally accepted to resolve the conflict among the circuits over the elements of a § 871 offense, but was disposed of on the basis of a procedural violation. *United States v. Rogers, supra*. Mr. Justice Marshall, joined by Mr. Justice Douglas, concurred separately. Those two Justices would have reached the merits of the question of intent under § 871. Mr. Justice Marshall felt that the test enunciated in *Ragansky* was too much of an infringement on pure speech and would have adopted a test that punished only threats "that the speaker intends to be interpreted as expressions of an intent to kill or injure the President." 422 U.S. 47, 95 S.Ct. at

2098, 45 L.Ed.2d at 11. In any event, our decision in *Rogers* on the question of intent is still binding on this panel.

## V. Pretrial Hearing

 Defendant contends that under the rule established in *Jackson v. Denno*, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, the trial court erred in denying his motion for a pretrial hearing.[5] The objective of the hearing would have been to determine the voluntariness and admissibility of any statements allegedly made by the defendant. This Court, however, finds the trial court was correct in deciding as a matter of law that the statements made by Kirk were not confessional and thereby not subject to suppression. The district court, under Rule 12(e) of the Federal Rules of Criminal Procedure, had the discretion to defer determination of defendant's objection to this evidence until trial and to hold that no pretrial evidentiary hearing into voluntariness was necessary.

The judgment of conviction is therefore reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GEE, Circuit Judge (specially concurring):

I find this case difficult, and while concurring fully in the opinion I would add these brief comments. The reasoning and language of the court found in Parts I, II and V seem to me impeccable. That of Part IV, however, may be read—though it need not be—as indicating a preference for the rule of the Fourth Circuit, stated in *United States v. Patillo*, 438 F.2d 13 (1971) (en banc), that the threat, to be actionable, must be made "with a present intention to do injury to the President." I do not agree with this reading. In the light of history, it does not seem to me much for the Congress to ask that people refrain from overt threats on the President's life, whatever the intent may be with which they are uttered, or that the Secret Service be dispensed from divining in each such case a serious intent or the lack of it.

Finally, I regard the decision on whether the instruction about entrapment should have been given as very close indeed. But it is our rule that a requested instruction in a criminal case must be given if it finds "any foundation in the evidence," and this "even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Young*, 464 F.2d 160, 164 (5th Cir. 1972), citing and quoting various authorities. Even so, this evidence very doubtfully clears even that low bar.

---

**5.** That case holds, *inter alia*, that an accused is entitled to a hearing on the issue of the voluntariness of his confession prior to its admission before the jury. 378 U.S. at 395, 84 S.Ct. 1774.