[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10732
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 24, 2010
JOHN LEY
CLERK

D.C. Docket No. 2:08-cr-00149-WKW-TFM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER MAKUSI OTEMBA OWUOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(September 24, 2010)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Peter Makusi Otemba Owuor, a citizen of Kenya, appeals his convictions for falsely representing himself to be a United States citizen, in violation of 18 U.S.C. § 911, and making false statements, in violation of 18 U.S.C. § 1001(a)(2).

## I.

On May 23, 2008, Owuor was in the booking area of the Montgomery City Jail waiting to be booked on outstanding state warrants. Immigration and Customs Enforcement Agents Diamond and Henderson were also in the booking area, waiting to book two individuals for immigration violations. The agents overheard Owuor speaking to a city police officer and noticed that he had a strong accent. The agents and Owuor entered into a conversation. During that conversation, the agents asked Owuor where he was from. He stated that he was a United States citizen and was born in Atlanta, Georgia. Agent Henderson then requested Owuor's arrest report from a city police officer and noticed that no social security number was listed on the report. Henderson asked Owuor for his social security number, and he provided it.

After returning to their office, the ICE agents ran Owuor's name through the National Crime Information Center. The NCIC report showed that Owuor had a

2

criminal record and listed Kenya as his country of birth.  The agents also called the Social Security Administration and were told that the social security number Owuor had provided belonged to someone else.  The agents then returned to the jail and interviewed Owuor, who was in handcuffs, in a visitation room.  The agents asked Owuor about his citizenship and he reiterated that he was a U.S. citizen.  Owuor explained that his father was a citizen of Kenya, but his mother was a U.S. citizen.  He also told the agents that he had a U.S. passport but that it was issued in a different name.  After those statements were made, the agents gave Owuor a <u>Miranda</u> warning, and the interview ceased.

On July 28, 2008, Owuor was indicted by a grand jury sitting in the Middle District of Alabama.  He was charged with falsely representing himself to be a United States citizen, in violation of 18 U.S.C. § 911, and making false statements, in violation of 18 U.S.C. § 1001(a)(2).  The charges were based only on Owuor's statements to the ICE agents during the interview in the visitation room.  Before trial, Owuor filed motions to suppress all his statements to the agents and to dismiss the indictment.  The district court denied both motions, and the case proceeded to a jury trial.  Owuor was found guilty as charged.  This is his appeal.

II.

Rule 12(d) of the Federal Rules of Criminal Procedure provides that "when factual issues are involved in deciding a [pretrial] motion, the court must state its essential findings on the record." Fed. R. Crim. P. 12(d). Owuor contends that the district court violated Rule 12(d) in its May 5, 2009 Memorandum Opinion and Order by failing to make detailed findings regarding the credibility of ICE Agents Diamond and Henderson. We find no merit in his position. The district court's order adequately explained its legal conclusions and its findings of fact upon which those conclusions were based. Cf. United States v. Ramstad, 219 F.3d 1263, 1265 (10th Cir. 2000) (finding rule violated where the district court did not make any findings or otherwise explain its denial of the defendant's motion to suppress); United States v. Moore, 936 F.2d 287, 288–89 (6th Cir. 1991) (finding rule violated where district court denied defendant's motion to suppress without explanation). To the extent that the district court relied on the ICE agents' testimony, implicit in the court's order is its determination that the agents were credible. The district court did not violate Rule 12(d).

## III.

Owuor also contends that the district court erred in denying his motion to suppress his statements to the ICE agents because he was not given a Miranda warning until after those statements were made. "We apply a mixed standard of

review to the denial of a suppression motion, reviewing the district court's findings of fact for clear error and its application of the law to those facts de novo." United States v. Farley, 607 F.3d 1294, 1325 (11th Cir. 2010).

In United States v. Kirk, 528 F.2d 1057 (5th Cir. 1976),[1] the defendant was arrested for public intoxication while hitchiking near San Antonio, Texas. Id. at 1059. When asked by city police officers where he was going, the defendant stated that he was going to Washington to kill the President of the United States. Id. at 1059–60. The city police officers then gave the defendant a Miranda warning and took him to the police station. At the station, the officers contacted the Secret Service and informed them about the defendant's threat on the President's life. Id. at 1060. Shortly thereafter, two Secret Service agents went to the police station to interrogate the defendant. Without giving the defendant another Miranda warning, the agents asked the defendant what he was doing in San Antonio and why he wanted to harm the President. In response, the defendant stated that the President and other politicians "were responsible for the bad condition of our country" and that "I'm going to fix things. I'm going to blow [his] brains out." Id. (quotation marks omitted). Based on that threat alone, the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit before October 1, 1981.

defendant was charged and convicted of threatening the life of the President of the United States, in violation of 18 U.S.C. § 871.  Id.

The defendant argued on appeal that the district court erred by admitting his threat into evidence because the Secret Service agents did not advise him of his Miranda rights before their interrogation.  See id. at 1061.  Our predecessor court rejected the defendant's argument, reasoning that "[t]he Fifth Amendment's prohibition against self-incrimination relates to crimes alleged to have been committed prior to the time when the testimony is sought."  Id. (emphasis added). Because the defendant's threat was itself a crime, the court concluded that his Fifth Amendment rights were not violated.  See id. at 1062 (explaining that "no fifth amendment problem is presented when a statement is admitted into evidence which is not confessional in nature, but in and of itself constitutes the crime charged"); see also United States v. Paskett, 950 F.2d 705, 708 (11th Cir. 1992) (explaining that "no person has a constitutional right to be warned of his rights before he commits a crime" (quotation marks omitted)); United States v. Smith, 7 F.3d 1164, 1167 (5th Cir. 1993) (concluding that defendant's threat to kill the president of the United States was admissible even if a Miranda violation occurred because the threat was a new crime rather than evidence of a prior offense); United States v. Mitchell, 812 F.2d 1250, 1254 (9th Cir. 1987) (rejecting argument that

6

the exclusionary rule bars prosecution of the crime itself), overruled on other grounds by Planned Parenthood of Columbia/Willamette, Inc., v. Am. Coalition of Life Activists, 290 F.3d 1058, 1066–70 (9th Cir. 2002).

Kirk controls the outcome of this case. As in Kirk, Owuor's statements to the ICE agents in the visitation room were new crimes rather than statements that related to past crimes. Accordingly, there is "no fifth amendment problem," see Kirk, 528 F.2d at 1061–62, and the district court did not err in denying Owuor's suppression motion.

IV.

Owuor also contends that the district court erred by giving an Allen charge to the jury. We review that decision only for abuse of discretion. United States v. Woodard, 531 F.3d 1352, 1364 (11th Cir. 2008). "We will find that a district court has abused its discretion in giving [an] Allen charge only if the charge was inherently coercive." Id. In determining whether the charge was coercive, "we consider the language of the charge and the totality of the circumstances under which it was delivered . . . ." Id.

The charge given by the district court was almost identical to the modified Allen charge in the Eleventh Circuit Pattern Jury Instructions. See U.S. Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Trial Instructions n.7 (West

7

2003).  We have approved the use of that instruction on several occasions.  See

e.g., United States v. Chigbo, 38 F.3d 543, 546 (11th Cir. 1994).  Nothing in the

circumstances surrounding the reading of the charge was coercive.  The district

court gave the Allen charge after the jury announced that it was deadlocked and

did not poll the jury before reading the charge.  At the time the charge was given,

the jurors had deliberated for roughly four hours.  The fact that the jury returned a

verdict about 20 minutes later is not enough to find the charge coercive.  See

United States v. Scruggs, 583 F.2d 238, 240–41 (5th Cir. 1978) (finding that Allen

charge was not coercive where charge was given after four and a half hours of

deliberations and was read forty-eight minutes before the jury returned a verdict);

Chigbo, 38 F.3d at 546 (concluding that 30 minutes between Allen charge and the

jury's verdict was not enough to find the charge coercive).  No abuse of discretion

occurred.

**AFFIRMED.**