The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
December 5, 2019

## 2019COA177

**No. 16CA2086, *People v. Compos* — Criminal Law — Search and
Seizure — Custodial Interrogation — Miranda**

A division of the court of appeals concludes for the first time in

Colorado that when an individual is interrogated in violation of

*Miranda,* and the response to the questioning is itself a criminal act

such as providing a false identity, *Miranda*'s exclusionary rule will

not bar admission of the statement at a subsequent trial involving

charges based on the criminal act.

COLORADO COURT OF APPEALS     **2019COA177**

Court of Appeals No. 16CA2086
Pueblo County District Court No. 16CR254
Honorable Thomas B. Flesher, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Vincent Joseph Compos,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE TOW
Harris and Márquez*, JJ., concur

Announced December 5, 2019

Philip J. Weiser, Attorney General, Rebecca A. Adams, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julia Chamberlin, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    Defendant, Vincent Joseph Compos, appeals from a judgment of conviction entered on jury verdicts finding him guilty of criminal impersonation and false reporting to authorities.  As a matter of first impression, we hold that when an individual is interrogated in violation of *Miranda,* and the response to the questioning is itself a criminal act such as providing a false identity, *Miranda*'s exclusionary rule will not bar admission of the statement at a subsequent trial involving charges based on the criminal act.  We therefore affirm the judgment.

## I.    Background

¶ 2    According to the prosecution's evidence, police arrested Compos at the home of the victim, a woman whom Compos had previously dated.  Compos had previously been arrested and charged with domestic violence crimes against the victim, which had resulted in a protection order being issued against Compos.[1]  On the night of his arrest, Compos appeared unexpectedly at the victim's home and, according to the victim, pointed a gun at her

---

[1] Among other things, the protection order prohibited Compos from being at the victim's home.

and one of her children, threatening to kill them. The victim called the police and fled.

¶ 3     The victim reported to the police that Compos was at her home in violation of the protection order and that he had assaulted her. Two officers confronted Compos while he was inside the victim's home. At that time, he identified himself as "J.R."

¶ 4     The officers arrested Compos. Later, as he was standing next to a police car in handcuffs, a third officer asked Compos his name and he replied, "John Rocha." Compos also volunteered a date of birth that matched John Rocha's identity. Afterward, officers discovered that Compos had provided a false name and date of birth in response to the officer's question.

¶ 5     Compos was charged with felony menacing, criminal impersonation, violation of bail bond conditions, and violation of a protection order. At Compos's request, the trial court bifurcated the proceedings, and Compos was first tried for felony menacing and criminal impersonation. The jury found him not guilty of felony menacing but guilty of criminal impersonation and the lesser nonincluded offense of false reporting to authorities. Compos later

2

pleaded guilty to a single count of violating a protection order in exchange for dismissal of the remaining charges.

¶ 6 On appeal, Compos contends that the trial court erred by (1) failing to suppress his post-arrest statement giving a false name and (2) declining to grant a mistrial after the victim testified about his prior bad acts.

## II.   Suppression of Statement

¶ 7 Before trial, Compos moved to suppress his statement to the officer that his name was "John Rocha" on the ground that it had been obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). After a hearing, the trial court denied the motion, concluding that the officer's question was a "standard question of identification" that was "consistent with when [Compos] would be booked into jail." Accordingly, the trial court found that the question did not constitute "custodial interrogation."

¶ 8 At trial, the prosecution relied on Compos's statement to support the charges of criminal impersonation and false reporting to authorities.

## A. Standard of Review

¶ 9      When considering a trial court's ruling on a motion to suppress, we defer to its findings of fact if they are supported by the record but review its conclusions of law de novo. *People v. Mejia-Mendoza*, 965 P.2d 777, 780 (Colo. 1998); *People v. Allen*, 199 P.3d 33, 35 (Colo. App. 2007). However, "appellate courts have the discretion to affirm decisions, particularly denial of suppression motions, on any basis for which there is a record sufficient to permit conclusions of law, even though they may be on grounds other than those relied upon by the trial court." *Moody v. People*, 159 P.3d 611, 615 (Colo. 2007).

## B. Analysis

¶ 10      The United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also* Colo. Const. art. II, § 18. To protect this right against self-incrimination, *Miranda* provides that a "suspect's statements made during a custodial interrogation are inadmissible unless the suspect received adequate advisement of his constitutional rights." *People v. J.D.*, 989 P.2d 762, 768 (Colo.

1999).  Therefore, *Miranda*'s protections apply only to a suspect who is (1) in custody and (2) subject to interrogation.  *Id.*

¶ 11    The trial court found, and the parties agree, that Compos was in custody when the officer asked him his name.  The parties disagree as to whether Compos was subject to interrogation.

¶ 12    Under *Miranda* and its progeny, a person is interrogated when he is subject to "either express questioning or its functional equivalent."  *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *see also People v. Gonzales*, 987 P.2d 239, 242 (Colo. 1999).  In other words, for *Miranda* purposes, interrogation includes not just direct questioning, but also "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Innis*, 446 U.S. at 301 (footnotes omitted).

¶ 13    The purpose of *Miranda* is to protect suspects from investigative interrogation, which might bend a suspect's will to that of his examiner, and not from routine questions about basic identifying information.  *Innis*, 446 U.S. at 299.  Accordingly, police officers are not required to give *Miranda* warnings prior to asking a

5

"routine booking question" aimed at securing the "biographical data necessary to complete booking or pretrial services." *Pennsylvania v. Muniz,* 496 U.S. 582, 601-02 (1990) (plurality opinion). But law enforcement officers' ability to inquire about basic identification and biographical data is not unlimited. Even as it created the "routine booking exception," the Supreme Court cautioned, "[w]ithout obtaining a waiver of the suspect's *Miranda* rights, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions." *Muniz,* 496 U.S. at 602 n.14.

¶ 14      Compos contends that the officer's request for his name was "express questioning" and thus "interrogation"; that it did not fall within *Muniz*'s booking exception to *Miranda* because it was not asked during the administrative booking process; and that it was likely to elicit an incriminating response, because his presence at the victim's home tended to show that he had knowingly violated the protection order. The People respond that notwithstanding the circumstances of the questioning, the trial court correctly treated the officer's inquiry as a noninvestigative, administrative question covered by the booking exception.

¶ 15    We need not resolve that dispute.  Even assuming the question was asked in violation of *Miranda*, we conclude that the trial court correctly denied the motion to suppress because Compos's false statement about his identity constituted a new crime, not evidence of a prior crime, and thus the exclusionary rule does not apply.

¶ 16    Generally, the prosecution is prohibited from admitting in its case-in-chief statements acquired through custodial interrogation in the absence of *Miranda* warnings.  *Miranda*, 384 U.S. at 492; *People v. Breidenbach*, 875 P.2d 879, 889 (Colo. 1994).  "However, not all evidence obtained as a result of an illegal interrogation must be suppressed under the exclusionary rule."  *Breidenbach*, 875 P.2d at 889.  For example, in *Breidenbach*, the Colorado Supreme Court analyzed a prosecution claim that evidence obtained in violation of *Miranda* should have nevertheless been admissible because of the inevitable discovery exception.  *Id.*

¶ 17    The theoretical and policy underpinnings of the Fourth Amendment exclusionary rule are different from those of the *Miranda* exclusionary rule.  *See People v. Trujillo*, 49 P.3d 316, 328 (Colo. 2002) (Coats, J., concurring in the judgment).  Thus, the full

scope of the two exclusionary rules may not be coextensive. However, as the supreme court made clear in *Breidenbach*, an exception to suppression rooted in the Fourth Amendment may be equally applicable in the Fifth Amendment context.

¶ 18    Another exception to the exclusionary rule is the new crime exception. The Colorado Supreme Court has adopted this exception in the Fourth Amendment context. *People v. Doke*, 171 P.3d 237 (Colo. 2007). In *Doke*, the supreme court held that "if, following an illegal stop or attempted stop, the detained person's response is itself a new, distinct crime, then the police constitutionally may arrest the person for that crime and the evidentiary fruit of that arrest will not be suppressed." *Id.* at 239 (quoting *People v. Smith*, 870 P.2d 617, 619 (Colo. App. 1994)); *see also People v. Tomaske*, 2019 CO 35, ¶ 18 (explaining that the Fourth Amendment exclusionary rule applies "where police officers' misconduct leads to their *discovery* of evidence of a *completed* crime" but not where the police misconduct "led to the *commission* of a *new* crime") (emphasis in original).

¶ 19    While no Colorado appellate court has addressed whether this exception applies to the *Miranda*-based exclusionary rule, other courts have.

¶ 20    In *United States v. Kirk*, 528 F.2d 1057 (5th Cir. 1976), the defendant was subjected to custodial interrogation without having been advised of his *Miranda* rights. *Id.* at 1060. During the interrogation, he told federal agents he was "going to blow the [President's] brains out." *Id.*

¶ 21    Based on that statement, the defendant was indicted for a single count of making threats against the President. *Id.* After being convicted, the defendant appealed the trial court's denial of his motion to suppress the threatening statement. In affirming, the court of appeals observed, "[t]he Fifth Amendment's prohibition against self-incrimination relates to crimes alleged to have been committed prior to the time when the testimony is sought." *Id.* at 1061. The court declined to require suppression of the statement because "no [F]ifth [A]mendment problem is presented when a statement . . . in and of itself constitutes the crime charged." *Id.* at 1062.

¶ 22     Similarly, in United States v. Mitchell, 812 F.2d 1250 (9th Cir. 1987), abrogated on other grounds by Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coalition of Life Activists, 290 F.3d 1058 (9th Cir. 2002), customs agents, who had information that the defendant had made threats against the President, arrested him.  Id. at 1252.  Without providing Miranda warnings, agents from another law enforcement agency later questioned the defendant and he reiterated his threat to kill the President.  Id.

¶ 23     The court of appeals affirmed the trial court's denial of the defendant's motion to suppress his statements.  *Id.* at 1253.  It concluded that "[c]ommitting a crime is far different from making an inculpatory statement, and the treatment we afford the two events differs accordingly."  *Id.*  The court reasoned that the exclusionary rule was not "the proper vehicle for determining whether a crime should be immunized from prosecution."  *Id.* at 1254.

¶ 24     The Seventh Circuit followed a similar approach in *United States v. Pryor*, 32 F.3d 1192 (7th Cir. 1994).  There, after arresting the defendant's friend, an officer asked the defendant for his identification.  In response, the defendant provided a false name

and Social Security card. *Id.* at 1194. Defendant was later charged with fraudulent use of a Social Security number. *Id.*

¶ 25 He challenged the admission of his false statements to the officers, both as the fruit of an illegal detention and as a violation of his *Miranda* rights. *Id.* at 1195. In rejecting the defendant's claims, the court of appeals declined to resolve several questions, including whether the defendant had been detained and whether he had been interrogated: "This is a nice list of questions, but none of the answers matters. [The defendant] did not divulge *evidence* of some prior crime during his few minutes in the office; instead he *committed* a crime, which makes all the difference." *Id.* The court held that "to suppress the evidence would be to say that the suspect is indeed free to commit the crime. The exclusionary rule, whether under the [F]ourth or [F]ifth [A]mendment, does not reach so far." *Id.* at 1196.

¶ 26 In our view, the principle enunciated in *Kirk, Mitchell,* and *Pryor* is both sound and consistent with our supreme court's announcement in *Doke.* We thus conclude that when an individual is interrogated in violation of *Miranda,* and his response to questioning is itself a crime, the exclusionary rule will not bar

11

admission of the response at any subsequent trial for charges based on the criminal act committed in the response.[2] As a result, albeit on different grounds, we affirm the trial court's denial of the motion to suppress. *See People v. Aarness*, 150 P.3d 1271, 1277 (Colo. 2006) (holding that an appellate court may affirm the trial court on any grounds supported by the record).

## III.   Mistrial

¶ 27    Compos next contends that the trial court violated his constitutional right to a fair trial by denying his motions for a mistrial after evidence of his prior bad acts was admitted.  We are not persuaded.

## A.    Standard of Review

¶ 28    We review a trial court's denial of a motion for mistrial for an abuse of discretion.  *People v. Van Meter*, 2018 COA 13, ¶ 9.  A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or it misapplies the law.  *Id.*  Where the request for a mistrial is based on improper statements at trial, we

---

[2] Of course, to be admissible, any statement must also be voluntary.  Compos does not challenge the voluntariness of his statement.

must give the trial court considerable discretion because it "is in a better position to evaluate any adverse effect of improper statements or testimony on a jury . . . ." *Id.* (quoting *People v. Tillery*, 231 P.3d 36, 43 (Colo. App. 2009)). The erroneous admission or presentation of prior bad act evidence is not constitutional error. *Yusem v. People*, 210 P.3d 458, 469 n.16 (Colo. 2009).

## B.    Law and Analysis

¶ 29    Evidence of a defendant's prior crimes or bad acts is generally inadmissible to prove the character of a person to show that he acted in conformity therewith on a particular occasion. CRE 404(b). However, the evidence may be admissible for other purposes, such as proof of motive, intent, plan, identity, or absence of mistake. *Id.*

¶ 30    In determining the admissibility of evidence concerning prior misconduct, a court should consider (1) whether the evidence relates to a material fact; (2) whether the evidence is logically relevant; (3) whether the evidence has logical relevance apart from the inference that the defendant has a bad character and acted in conformity therewith to commit the crime charged; and (4) whether the probative value of the evidence is substantially outweighed by

13

the danger of unfair prejudice.  *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990).

¶ 31     Even if prior bad act evidence is erroneously admitted, however, a mistrial is "the most drastic of remedies."  *People v. Abbott*, 690 P.2d 1263, 1269 (Colo. 1984).  Therefore, a court abuses its discretion in denying a mistrial only when the presentation of inadmissible evidence is likely to have substantially prejudiced the jurors despite other remedies.  *Id.*  In considering whether a trial court should have declared a mistrial, relevant factors include the nature of the inadmissible evidence, the weight of admissible evidence concerning the defendant's guilt, and the value of any cautionary instruction given.  *People v. Vigil*, 718 P.2d 496, 505 (Colo. 1986).

¶ 32     Compos asserts that the victim made two prejudicial statements at trial in violation of CRE 404(b).

¶ 33     First, when the prosecutor asked the victim to describe her argument with Compos on the day of his arrest, she testified that he was "[j]ust pushing me around, yelling at me like he always did."  Defense counsel objected and moved for a mistrial.  The trial court denied the motion.

14

¶ 34    Second, in response to the prosecutor's questions about an interview with a defense investigator, the victim testified that she and the investigator had talked about her relationship with Compos "and other pending cases." Defense counsel renewed his motion for a mistrial, and the court again denied the motion. However, the trial court precluded the prosecutor from asking further questions and offered to instruct the jury to disregard the statement about pending cases. Defense counsel declined the court's offer.

¶ 35    Even assuming the two statements were inadmissible under Rule 404(b), we conclude that their admission did not warrant a mistrial. The victim's statement that Compos was "pushing her around" and yelling "like he always did" did not unambiguously indicate that Compos had previously subjected her to physical abuse. True, her testimony could have been construed to mean that he had pushed the victim on other occasions, but it could also have been construed to mean that although he habitually yelled at her, on this occasion, he also pushed her.

¶ 36    Likewise, when viewed in context, the second statement referencing "other pending cases" did not clearly implicate Compos. During cross-examination, defense counsel extensively questioned

15

the victim about criminal charges she incurred based on her encounter with police on the night of Compos's arrest. On redirect examination, the victim acknowledged "other pending cases." Given that the victim had just discussed the charges filed against her, this statement did not explicitly refer to any criminal conduct by Compos.

¶ 37 An ambiguous reference to a defendant's prior criminal misconduct or other bad acts does not warrant a mistrial. *People v. Salas*, 2017 COA 63, ¶ 12; *People v. Lahr*, 2013 COA 57, ¶¶ 24, 27. Moreover, when a reference to improper conduct is fleeting, as it was here with respect to both statements, the potential prejudice is minimized. *Lahr*, ¶ 24.

¶ 38 Any prejudice created by the victim's statements is especially inconsequential in this case given the other evidence of Compos's prior misconduct, including evidence that the victim had obtained a protection order against him. In other words, the jury was aware, based on properly admitted evidence, that Compos had engaged in prior misconduct with respect to the victim. We do not believe that the victim's fleeting statements about pushing and yelling or "other pending cases" would have substantially altered the jury's existing

16

impression of Compos. Nor, it appears, did defense counsel perceive that the victim's testimony was particularly prejudicial, as he declined the court's offer of a limiting instruction.

¶ 39 We note as well that the jury did not find Compos guilty of felony menacing. The verdict of acquittal on some counts but not others indicates that the jury was able to separate the facts and law applicable to each charge and it did not blindly convict based on prejudicial testimony. *Martin v. People*, 738 P.2d 789, 795-96 (Colo. 1987) (concluding that the jury's failure to convict on all counts was an indication that it did not blindly convict the defendant based on prejudicial evidence of a prior conviction).

¶ 40 Moreover, there was ample evidence that Compos repeatedly misrepresented his identity to the police, and the jury was able to rely on this evidence alone to convict Compos.

¶ 41 Accordingly, we do not perceive that the trial court abused its discretion by denying Compos's motions for a mistrial.

IV. Conclusion

¶ 42 The judgment is affirmed.

JUDGE HARRIS and JUDGE MÁRQUEZ concur.

17