# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 22, 2020

Lyle W. Cayce
Clerk

No. 20-50319

Arthur Baisley,

*Plaintiff—Appellant*,

*versus*

International Association of Machinists and Aerospace Workers,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-531

Before Clement, Ho, and Duncan, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

The International Association of Machinists and Aerospace Workers ("IAM") is the exclusive union representative for United Airlines employees like Arthur Baisley. Baisley is not a union member. But, following longstanding practice and established case law, the IAM required Baisley—like all other dues objectors—to opt out of paying full union dues.

Baisley sued to invalidate the opt-out procedures as violative of his First Amendment rights, the Railway Labor Act ("RLA"), 45 U.S.C. § 152, Eleventh, and the IAM's Duty of Fair Representation. Finding Baisley's

claims foreclosed by the same precedents that animated the IAM's procedures, the district court dismissed his suit under Federal Rule of Civil Procedure 12(b)(6). Upon de novo review, *see Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011), we reach the same conclusion and affirm.

Baisley's challenge is far from novel. The Supreme Court has previously upheld the challenged statute, Section 2, Eleventh of the RLA, against facial and as-applied challenges. *Ry. Emps.' Dep't v. Hanson*, 351 U.S. 225 (1956); *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740 (1961). In *Street*, the Court said that the RLA contemplates "forc[ing] employees to share the costs of negotiating and administering collective agreements," but not "forcing employees, over their objection, to support political causes which they oppose." *Street*, 367 U.S. at 764. Accordingly, the Court construed the statute "to deny the unions, over an employee's objection, the power to use his exacted funds to support political causes which he opposes." *Id.* at 768–69. Moreover, *Street* said, "dissent is not to be presumed—it must affirmatively be made known to the union by the dissenting employee." *Id.* at 774.

Following *Street*, which we recognized as "the seminal case on the matter," this court approved this very union's opt-out procedures. *Shea v. Int'l Ass'n of Machinists & Aerospace Workers*, 154 F.3d 508, 513 (5th Cir. 1998); *id.* at 515 (allowing opt-out procedure under the RLA, while striking union requirement that nonmembers annually renew objections). Just a few years ago, we reaffirmed an identical system. *See Serna v. Transp. Workers Union of Am. AFL-CIO*, 654 F. App'x 665, 665–66 & n.1 (5th Cir. 2016) (mem.) ("*Shea* obliges us to uphold the union's current opt-out policy.").

Against that line of private-sector cases, Baisley presents the Supreme Court's recent trio of decisions in *Knox v. SEIU, Local 1000*, 567 U.S. 298 (2012), *Harris v. Quinn*, 573 U.S. 616 (2014), and *Janus v. AFSCME, Council*

*31*, 138 S. Ct. 2448 (2018). Baisley especially points to *Janus*'s declaration that such opt-out procedures impose an unconstitutional burden on public employees' First Amendment rights. *Id.* at 2486. But *Janus* and those other cases dealt with public-sector unions, so it is undisputed that applying them to this private-sector dispute would require us to extend into a new realm. The difficulty for Baisley is that *Janus* itself cautions against such an extension. So, indeed, do *Knox* and *Harris*.

*Knox*, which says nothing about private unions, notes that "[b]ecause a public-sector union takes many positions during collective bargaining that have powerful political and civic consequences, the compulsory fees constitute a form of compelled speech and association that imposes a 'significant impingement on First Amendment rights.'" *Knox*, 567 U.S. at 310–11 (quoting *Ellis v. Ry. Clerks*, 466 U.S. 435, 455 (1984)) (citation omitted). And *Harris* warns against "fail[ing] to appreciate the difference between the core union speech involuntarily subsidized by dissenting public-sector employees and the core union speech involuntarily funded by their counterparts in the private sector." *Harris*, 573 U.S. at 636. "In the public sector, core issues such as wages, pensions, and benefits are important political issues, but that is generally not so in the private sector." *Id.* These admonitions give us serious pause.

*Janus* itself says it is unclear whether "the First Amendment applies *at all* to private-sector agency-shop arrangements" like this one. *Janus*, 138 S. Ct. at 2480 (emphasis added). It is "questionable" whether "Congress's enactment of a provision [of the RLA] allowing, but not requiring, private parties to enter into union-shop arrangements was sufficient to establish governmental action." *Id.* at 2479 n.24. And even if the First Amendment does apply here, "the individual interests at stake still differ," for the reasons articulated in *Harris*. *Id.* at 2480 (citing *Harris*, 573 U.S. at 636). If *Knox* and *Harris* have us pumping the brakes, *Janus* brings us near a full stop.

Baisley's response is hardly reassuring.  He urges extension because *Knox* tells us that *Street*'s approval of opt-out procedures was mere "dicta." *Knox*, 567 U.S. at 312–13 (citing *Street*, 367 U.S. at 774).  With that foundation removed, Baisley says, *Shea* is ours to reconsider anew.  *See, e.g.*, *Shea*, 154 F.3d at 513.  Of course, it is not so simple.  We are bound to follow a prior panel's opinion "until the decision is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc."  *United States v. Kirk*, 528 F.2d 1057, 1063 (5th Cir. 1976).  Just as important, it is not clear that we should.  Perhaps *Street* creates an opening to reconsider *Shea*'s First Amendment holding.  *See Shea*, 154 F.3d at 515.  If so, that just brings us right back to *Janus*'s query whether "the First Amendment applies at all."  *Janus*, 138 S. Ct. at 2480.  *Street*'s opt-out language may be dicta, but it remains to be seen how the Supreme Court will interpret that distinction in a private-sector dispute.  *Cf. Rizzo-Rupon v. Int'l Ass'n of Machinists & Aerospace Workers*, 822 F. App'x 49 (3d Cir. 2020) (unpublished) (upholding union opt-out procedures against facial challenge).

Indeed, that is the question for the whole *Janus* line.  And, amidst all this uncertainty, we are reminded of the Supreme Court's caution: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."  *Rodriguez de Quijas v. Shearson/Am. Express Inc.*, 490 U.S. 477, 484 (1989).  Heeding that advice, we find no constitutional infirmity in the IAM's opt-out procedures under the settled decisions of the Supreme Court and this Circuit.  By extension, Baisley's constitutional-avoidance statutory and Duty of Fair Representation claims also fail.

AFFIRMED.